Keith T. HARSTAD, doing business as Harstad Companies; Diane N. Harstad, doing business as Harstad Companies, Appellants,

v.

FIRST AMERICAN BANK, formerly known as Drovers First American Bank of South St. Paul, Appellee.

No. 94–1389.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 10, 1994.

Decided Nov. 9, 1994.

James L. Baillie, Minneapolis, MN, for appellants.

Daniel Beck, St. Paul, MN, for appellee.

Before BOWMAN, WOLLMAN, and HANSEN, Circuit Judges.

BOWMAN, Circuit Judge.

Keith and Diane Harstad, doing business as Harstad Companies, appeal from the order of the District Court[1] affirming the decision of the Bankruptcy Court[2] granting the motion of First American Bank (the Bank) to dismiss.[3] We affirm.

---

1. The Honorable Donald D. Alsop, Senior Judge, United States District Court for the District of Minnesota.

2. The Honorable Robert J. Kressel, Chief Judge, United States Bankruptcy Court for the District of Minnesota.

3. The Bankruptcy Court treated the Bank's motion to dismiss as a motion for summary judg-

## I.

■ On February 16, 1990, the Harstads filed a voluntary Chapter 11 (reorganization) bankruptcy petition. Nearly two and one-half years later, on August 21, 1992, they submitted an amended disclosure statement to the Bankruptcy Court, which included only this statement concerning preferences:[4]

> Debtors and the Committee of Unsecured Creditors have not yet completed the analysis of pre-petition preferential transfers subject to avoidance under 11 U.S.C. § 547. Debtors do not know at the present time whether or not there are any avoidable preferential transfers.

Debtors' Amended Disclosure Statement art. IV(A) (Aug. 21, 1992). This was the only reference to preferential transfers in the document. On October 19, 1992, the Bankruptcy Court confirmed the Harstads' Amended Plan of Reorganization, without any update to the preference disclosure (or lack thereof) earlier filed with the Bankruptcy Court.[5]

By January 15, 1993, just three months after the Plan was confirmed, the Harstads evidently had "completed the analysis of pre-petition transfers," because they filed adversary proceedings in the Bankruptcy Court seeking avoidance and recovery of approximately $841,850.00 in alleged preferential transfers, including $140,663.00 from the Bank for an amount paid to it on December 8, 1989, to cover an insufficient funds check issued by the Harstads.[6] The Bank filed a motion to dismiss, which was treated as a motion for summary judgment, *see supra* n. 3, and was granted by the Bankruptcy Court. *Harstad v. First American Bank (In re Harstad),* 155 B.R. 500 (Bankr.D.Minn.1993) (subsequent history omitted). The Bankruptcy Court held, among other things, that the Harstads lack standing to pursue the preference claim against the Bank. The court also held that the Harstads were precluded from bringing the action in any event, because any recovery would not benefit the estate. The Harstads appealed to the District Court, which affirmed the judgment of the Bankruptcy Court, and they now appeal to this Court. We review *de novo.* *Goldman Fruit & Produce Co. v. Lombardo Fruit & Produce Co. (In re Lombardo Fruit & Produce Co.),* 12 F.3d 110, 113 (8th Cir. 1993).

## II.

The Harstads challenge the Bankruptcy Court's conclusion that they do not have standing to bring the preference action against the Bank.

■ The bankruptcy trustee has the discretionary power to avoid and to recover preferential transfers. *See* 11 U.S.C. §§ 547(b), 550(a) (1988); *supra* n. 4. When the Harstads filed their voluntary Chapter 11 bankruptcy petition, they assumed the status

---

ment pursuant to Federal Rule of Civil Procedure 12(b) and Federal Rule of Bankruptcy Procedure 7012(b), which provide for such treatment when the court, in ruling on a motion to dismiss, considers matters outside the pleadings.

4. In general terms and for our purposes here, a preference is a transfer of property to a creditor in payment for a debt, made when the debtor is insolvent or within ninety days before the filing of a bankruptcy petition, and in an amount exceeding that which the creditor would have received under the Chapter 11 reorganization. The bankruptcy trustee may avoid and recover such transfers. 11 U.S.C. §§ 547(b), 550(a) (1988).

5. The Harstads assert that their business records were made available to creditors, Appellants' Reply Brief at 1, with the implication that the creditors therefore had all the information that was required for them to identify the preferences for themselves. If the unidentified preferences should have been obvious to the Harstads' credi-

tors, however, then why were they not obvious to the Harstads themselves, who would have been intimately familiar with their own business dealings?

6. According to the Bank, the transfer was made to the Bank to pay a debt incurred as the result of a check-kiting scheme that the Harstads perpetrated with the assistance of one of their business partners. The Harstads deny this (Keith Harstad in his affidavit calls the problem an "overdraft"). They question why the Bank did not report them to the proper authorities if they believed they were dealing with a kite, but instead only threatened the Harstads with prosecution if they did not pay up (a threat that evidently worked, notwithstanding the Harstads' assertion of innocence). Despite the pejorative accusations from both sides, neither the origin of the debt nor its legitimacy is relevant to the issues before us.

of "debtor in possession," *see id.* §§ 1101(1), 101(13) (1988 & Supp. V 1993), and, as such, they acquired most of the rights and powers (and duties) of a bankruptcy trustee, *see id.* § 1107(a) (1988). Therefore the Harstads, while serving the function of debtor in possession, had the power to avoid and to recover preferences. The Harstads failed to exercise those powers while they were acting as the debtor in possession (before their reorganization plan was confirmed, *see In re Grinstead,* 75 B.R. 2, 3 (Bankr.D.Minn.1985)) and now seek to do so post-confirmation.

As Chapter 11 debtors, the Harstads could have brought a post-confirmation action on "any claim or interest belonging to the debtor or or to the estate" (or could have designated some other entity to do so) if their Plan had provided for "the retention and enforcement [of that claim or interest] by the debtor, by the trustee, or by a representative of the estate appointed for such purpose." 11 U.S.C. § 1123(b)(3) (1988). Nowhere in the Plan, however, did the Harstads make such a provision.

■ The Harstads argue that a portion of the Plan's Article X can be read as reserving the preference cause of action for them as post-confirmation debtors:

> The Court will retain jurisdiction until this Plan has been fully consummated for the following purposes: ... determination of all causes of actions [sic] between Debtors and any other party, including but not limited to any right of Debtors to recover assets pursuant to the provisions of the Bankruptcy Code....

The Harstads' argument must fail. Article X, captioned "Continuing Jurisdiction," concerns the ongoing jurisdiction of the Bankruptcy Court for matters that arise after plan confirmation.[7] Noting the retention of the court's statutory jurisdiction to hear post-confirmation matters is a far cry from reserving to the debtors a right to bring post-confirmation claims to recover preferences paid by the debtors but never disclosed by them during the pre-confirmation proceed-

ings. We hold that the above-quoted language is not a retention of the claim at issue here—much less the "specific and unequivocal" retention that some courts require. *See, e.g., Retail Mktg. Co. v. Northwest Nat'l Bank (In re Mako),* 120 B.R. 203, 209 (Bankr.E.D.Okla.1990), *quoted in Retail Mktg. Co. v. King (In re Mako, Inc.)* 985 F.2d 1052, 1055 n. 3 (10th Cir.), *appeal decided,* 5 F.3d 547 (10th Cir.1993) (table). We agree with the Bank that, if the Harstads wished to retain the power to enforce this claim pursuant to § 1123(b)(3), it would have been a simple matter to do so with straightforward language (although not so easy to do without alerting their creditors and the Bankruptcy Court to the possibility of viable preference claims).

■ The Harstads would have us rely on 11 U.S.C. § 1141(b) (1988), rather than § 1123(b)(3), in deciding whether they may maintain this cause of action, and they urge us to follow the decision in *J.E. Jennings, Inc. v. William Carter Co. (In re Jennings, Inc.),* 46 B.R. 167 (Bankr.E.D.Pa.1985). Section 1141(b) states that "the confirmation of [the] plan vests all of the property of the estate in the debtor," unless the plan provides otherwise. The Harstads argue that this cause of action is "property of the estate" because their Plan does not provide otherwise (that is, it does not vest an entity other than themselves with enforcement powers under § 1123(b)(3)), and thus it is now theirs to maintain in the Bankruptcy Court. We disagree.

■ Were we to adopt the Harstads' argument, we would render § 1123(b)(3) a nullity. As the Harstads see it, § 1123(b)(3) gives debtors discretion to reserve to themselves, in their plans, post-confirmation claims, which claims are subsumed in the broad category of "property of the estate" that already vests in the debtors automatically upon plan confirmation under § 1141. Why then would a debtor ever bother to retain a power by specific plan language when the Bankruptcy Code gives him that power automatically?

---

7. We hasten to add that Article X cannot and does not *confer* jurisdiction upon the court, as only Congress may do that. We view it instead as merely setting forth the understanding of the Harstads, the court, and the creditors as to what actions would be brought in the bankruptcy court post-confirmation.

We think that the affirmative course of action set forth in § 1123(b)(3), to be followed by the debtor who wishes to retain the right to bring preference claims, preempts the general provision of § 1141 that dumps all remaining post-confirmation estate property into the lap of the debtor. The court in *Jennings* adopted the argument the Harstads put forth here, but did not even consider the implications of its holding on § 1123(b)(3). In fact, nowhere in the opinion was the section mentioned. For that reason alone, *Jennings* is not persuasive.

 We view § 1123(b)(3) as, at least in part, a notice provision. Creditors have the right to know of any potential causes of action that might enlarge the estate—and that could be used to increase payment to the creditors. Even if, as the Harstads claim, they gave notice of such claims by indicating in their disclosure statement that the availability of such claims was being investigated, the creditors are entitled to know if the debtors intend to pursue the preferences in post-confirmation actions. Compliance with § 1123(b)(3) gives notice of that intent. Only then are creditors in a position to seek a share of any such recoveries, contingent though they may be, and to have the mechanics of the preference-sharing spelled out in the plan. Creditors are in no position to do so if they are not on notice that the debtor retains the power to pursue recovery. *See Amarex, Inc. v. Marathon Oil Co. (In re Amarex)*, 74 B.R. 378, 381 (Bankr.W.D.Okla. 1987) (holding the retention requirement of § 1123(b)(3) was satisfied where disclosure statement and plan said preference claims, with actions begun before confirmation, were passed to post-confirmation successor in interest), *aff'd*, 88 B.R. 362 (W.D.Okla.1988).

 We are not swayed by the Harstads' argument that our analysis works a forfeiture of the preference claims and gives a windfall to the Bank. As with any cause of action, at some point there must be repose. In many cases, that repose is effectuated by the limitations statute governing the action. In this case, the Harstads had more than two and one-half years prior to the confirmation of their Plan to identify, to avoid, and to recover any preferential transfers they might

have made. And if that was not adequate time (although it is a mystery to us why the Harstads could not have identified in two and one-half years an alleged preferential transfer they personally made fewer than ninety days before filing bankruptcy), then they should have specifically reserved the right to pursue claims of this sort post-confirmation. If the claim in this case can be characterized as forfeited, and if the Bank has received a windfall, then it is the Harstads in the role of debtor in possession who worked the forfeiture and awarded the windfall, perhaps breaching the fiduciary duty owed to their creditors in the process. *See Yellowhouse Mach. Co. v. Mack (In re Hughes)*, 704 F.2d 820, 822 (5th Cir.1983); *In re Republic Fin. Corp.*, 128 B.R. 793, 802 (Bankr.N.D.Okla. 1991); *In re Leisure Dynamics*, 32 B.R. 753, 756 (Bankr.D.Minn.), *aff'd*, 33 B.R. 121 (D.Minn.1983).

Having considered all the Harstads' arguments, we agree with both of the lower courts that the Harstads lack standing to bring this action.

### III.

Even if we were to assume for the sake of argument that the Harstads have standing in this cause, they still cannot prevail.

To the extent that the trustee may avoid a preference under § 547, he "may recover, *for the benefit of the estate*" the transferred property or the value of the property. 11 U.S.C. § 550(a) (emphasis added). The Harstads contend that a recovery on the claim at issue would benefit the estate, both directly and indirectly, but the Bankruptcy Court found otherwise, and held that this ground precludes the Harstads' action.

While a direct benefit to the Harstads themselves is crystal clear, any direct benefit that would accrue to the estate is quite difficult to discern. The Plan does not provide for the distribution of any preference recoveries to creditors. Moreover, the Harstads are not suggesting that they voluntarily will turn over additional funds to creditors or that they will seek a modification of the Plan in order to insure that the creditors share in any recovery. *Cf. In re Jennings, Inc.*, 46

B.R. at 171 (finding no windfall to debtors where debtors submitted "affidavits and exhibits establishing that any funds recovered from this [preference] action ... will be distributed to creditors"). Instead, the Harstads "direct benefit" theory derives from the role they view themselves as assuming in these proceedings.

The Harstads contend that the Bankruptcy Court erred in treating the terms "estate," as used in § 550(a), and "creditors" as synonymous, see In re Harstad, 155 B.R. at 511, and thereby erred in failing to find a benefit to the estate. They contend that the "estate" is now Keith and Diane Harstad d/b/a Harstad Companies, which would be directly benefited by the recovery of the alleged preference.

 But even if we accept the argument that the "estate" and the "creditors" are not the same entity in post-confirmation actions under § 550(a), the Harstads must lose. Once a plan of reorganization is confirmed, and unless the plan provides otherwise (which the Plan here does not), the property of the bankruptcy estate vests in the debtor and the debtor is discharged from his pre-petition debts. 11 U.S.C. § 1141 (1988). Ordinarily, then, subject to exceptions not relevant here, the rule is that the estate is dissolved upon confirmation of the plan. See, e.g., In re NTG Indus., 118 B.R. 606, 610 (Bankr.N.D.Ill.1990). The Harstads themselves rely upon this proposition in making their § 1141 argument, see supra part II, that property of the estate, including preference claims, vests in the debtor upon plan confirmation. We conclude there is no post-confirmation bankruptcy estate here to be benefited—directly or indirectly. Therefore we agree with the courts below that we must look to see whether the Harstads' action would result in any benefit to creditors.

Even the cases cited by the Harstads recognize that it is the creditors that must benefit from post-confirmation preference actions. See, e.g., Tennessee Wheel & Rubber Co. v.

Captron Corp. Air Fleet (In re Tennessee Wheel & Rubber Co.), 64 B.R. 721 (Bankr. M.D.Tenn.1986), aff'd, 75 B.R. 1 (M.D.Tenn. 1987). The exception is Trans World Airlines, Inc. v. Travellers Int'l AG. (In re Trans World Airlines, Inc.), 163 B.R. 964, 972 (Bankr.D.Del.1994), which distinguishes the terms "estate" and "creditors." But the court in Trans World was dealing with claims brought well before plan confirmation—in fact, the actions were begun within two months after the petition was filed. Therefore, when the complaints were filed there was still an estate to be benefited. Even the Trans World court noted, "The basic purpose of a recovery pursuant to § 550(a) is to enlarge the estate for the benefit of creditors." Id. at 973 (emphasis added).

The Harstads argue that, in any case, there is a benefit, albeit indirect, to the creditors. According to the Harstads, any recovery of the alleged preference will increase the likelihood that they will be able to pay their creditors as the Plan requires, even though it will not increase the amount paid to the creditors. We know, however, that the Bankruptcy Court would not have confirmed the Plan had it not been feasible, see 11 U.S.C. § 1129(a)(11) (1988); see also Clarkson v. Cooke Sales & Serv. Co. (In re Clarkson), 767 F.2d 417, 420 (8th Cir.1985), and the Harstads themselves testified to feasibility at the confirmation hearing.[8] Further, neither the Plan nor the Disclosure Statement indicates in the sections describing how the Plan will be executed that the Harstads will be relying upon preference recoveries to fund the Plan, much less that such actions exist or will be pursued. Cf. In re Tennessee Wheel & Rubber Co., 64 B.R. at 726 (finding benefit to creditors where "retention of the power to pursue avoidance actions" as per the Plan was part of the consideration for a post-confirmation line of credit).

---

8. There is nothing in the record to indicate that the Harstads are finding their obligations under the Plan impossible to meet. The Harstads argue that this lack of evidence indicates a genuine issue of material fact, and so summary judgment here was inappropriate. The Harstads, however, may not come before this Court and intimate that there may be a genuine fact issue. They had the opportunity in the Bankruptcy Court to come forward with affidavits or other evidence showing a genuine issue for trial, see Fed.R.Civ.P. 56(e), but they did not do so and cannot now simply assert in this Court that one may exist.

We do not hold that a bankruptcy trustee or a debtor in possession (or a debtor or an appointed representative under powers reserved via § 1123(b)(3)) must demonstrate a direct benefit to the creditors in the form of a distribution to the creditors of the preference recovery [9] (although that would certainly make this a much easier issue to decide). *See Kroh Bros. Dev. Co. v. United Mo. Bank of Kansas City, N.A. (In re Kroh Bros. Dev. Co.)*, 100 B.R. 487, 498 (Bankr.W.D.Mo.) (finding substantial benefit to unsecured creditors where they would receive proportionate share of at least half of preference recoveries), *appeal denied*, 101 B.R. 1000 (W.D.Mo.1989); *Jet Fla., Inc. v. American Airlines, Inc. (In re Jet Fla., Inc.)*, 73 B.R. 552, 556 (Bankr.S.D.Fla.1987) (finding direct and indirect benefit to creditors where eighty percent of proceeds of preference actions were to go to creditors, and remaining twenty percent indirectly benefited creditors as they were the sole shareholders of the reorganized entity). Nevertheless, we do hold that those wishing to bring preference actions must show a more definite benefit to creditors than the Harstads have shown here. Simply arguing that the recovery of a preference may make it easier for the debtors to fulfill their obligations under the already confirmed Plan—a plan that was not accepted by the Harstads' creditors in reliance on or in anticipation of such a recovery—is inadequate to show a benefit to the estate under § 550(a).

## IV.

We have taken with the case the Harstads' motion to strike a letter that the Bank submitted to the Court before oral argument, ostensibly pursuant to Federal Rule of Appellate Procedure 28(j). Rule 28(j) is designed to allow a party to supplement authority for issues already argued in that party's brief. The Bank's letter cites authority purported to support a statute of limitations defense to the Harstads' claims, a defense neither raised in the motion to dismiss nor decided by the Bankruptcy Court in its summary judgment order. The letter provides supplemental authority for an argument that would not be properly before the Court, because it was not raised below, even if it were before the Court at all, which it is not because it was not even mentioned in the Bank's brief. The Harstads' motion is granted.

The judgment of the District Court affirming the judgment of the Bankruptcy Court is affirmed.

---

9. The Bankruptcy Court's decision in this case was roundly criticized by the bankruptcy court in *Trans World Airlines, Inc. v. Travellers Int'l AG. (In re Trans World Airlines, Inc.)*, 163 B.R. 964 (Bankr.D.Del.1994). The *Trans World* court called the *Harstad* court to task for requiring a "meaningful" benefit to the estate, *id.* at 973 and thought *Harstad* could be read as "requiring a direct distribution of the recovery to creditors," *id.* at 974. We think the *Trans World* court read *Harstad* too narrowly. Moreover, the situations in the two cases are readily distinguished. The recovery action in *Trans World* was begun long before plan confirmation, while there was still an estate. Creditors were well aware of the potential recovery when they voted on plan confirmation. In addition, the creditors, as post-confirmation shareholders and noteholders, would indirectly benefit from any preference recovery.