### In re AERIAL TRANSIT COMPANY, Debtor.

**James S. FELTMAN, Liquidating Trustee, Plaintiff,**

v.

**AMERICAN INTERNATIONAL AIRWAYS, INC.; Elvira L. Andres d/b/a Aguila Shipping Services; Herrol W. Bellomy and Agnes E. Bellomy, as Trustees; Charter America, Inc.; Charles A. Lawson; Elvira S. Wirth; and William Seidle Aircraft Sales & Services, Inc., Defendants.**

Bankruptcy No. 92–17033–BKC–AJC.
Adv. No. 94–0138–BKC–AJC–A.

United States Bankruptcy Court,
S.D. Florida.

Jan. 4, 1996.

Ronald G. Neiwirth, Semet, Lickstein, Morgenstern, Berger, Friend, Brooke & Gordon, Coral Gables, FL, for Trustee.

Andrew B. Hellinger, Mishan, Sloto, Hoffman & Greenberg, P.A., Miami, FL, for Bellomy–Lawson.

John Shawde, Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, FL, for Bill Seidle Aircraft Sales.

### ORDER GRANTING FINAL SUMMARY JUDGMENT AGAINST BELLOMY LAWSON

A. JAY CRISTOL, Chief Judge.

**THIS MATTER** came before the Court on July 27, 1995, on Plaintiff's motion for Sum-

mary Judgment against the Defendants Herrol W. Bellomy and Agnes E. Bellomy as Trustees under the Herrol W. Bellomy Trust Agreement dated December 15, 1987, as amended; Agnes E. Bellomy and Herrol W. Bellomy as Trustee under the Agnes E. Bellomy Trust Agreement dated December 15, 1987, as amended, and Charles A. Lawson (collectively referred to herein as "Bellomy–Lawson"). Bellomy Lawson had also moved for Summary Judgment, seeking dismissal of the amended complaint against them. For the reasons set forth below, the Court grants the Plaintiff's motion for summary judgment and denies the Bellomy–Lawson defendants' motion for summary judgment.

### The Facts

The salient facts are essentially undisputed. In May, 1991, Bellomy–Lawson, then being 100% shareholders of Aerial Transit, Inc., the Debtor corporation, entered into an agreement to sell their stock to a newly-formed Nevada corporation, Cargo Aire Group, Inc. ("Cargo Aire"). The price was $1.5 million, with a 10% down-payment, and the entire remainder of the purchase price was to be paid at the closing (the "cash to close"), after the outstanding trade payables of the Debtor had been deducted. Ultimately, the parties agreed that the "cash to close" was $505,324.76. Prior to the stock sale, Bellomy–Lawson had removed several aircraft from the corporation, as well as all cash, receivables, spare airplane tires and other items; thus, at the time of closing, the assets consisted of two DC–6 aircraft, a C–121 certificate, some spare parts, the furniture, fixtures and equipment in the office of the Debtor, and its lease with the Dade County Aviation Authority, under which it was obligated to pay almost $35,000 per month for occupancy. It had no receivables, no cash equivalents, and no cash. The contract entered into between Cargo Aire and Bellomy–Lawson recognized the Debtor's lack of liquidity at closing, and contemplated that the Debtor would have to be recapitalized by Cargo Aire; it also provided that, on the date of closing, Bellomy–Lawson would loan the exact "cash to close" back to the Debtor in return for the Debtor's note, to be guaranteed by Cargo Aire, its new parent, and to be secured by a mortgage encumbering the two DC–6 aircraft. In effect, Bellomy–Lawson and Cargo Aire created a leveraged buyout.

To document the alleged "loan" on the date of closing, May 21, 1991, Cargo Aire issued its check No. 1001 in favor of Bellomy–Lawson in the amount of $505,324.76 for the "cash to close". Bellomy–Lawson in turn, endorsed the self same check, without recourse, to the order of the Debtor. The check was drawn on an account which had $10.00 in it as of May 21, 1991, and never had sufficient funds therein to make the check good. The check was never deposited; after the statutory 6 months, it became stale.

In a prior hearing concerning the same subject matter, Defendant produced Mark Ottosen as its witness. He had been an officer of both Cargo Aire and the Debtor at the relevant time. He confirmed that the Debtor emerged from the closing on May 21, 1991 with no receivables, no cash, no liquid assets, approximately $845,000 in short term trade payables, and a business plan wherein Cargo Aire, its new owner, contemplated the necessity of injecting in excess of $1.2 million of new capital into the Debtor before it would reach the break even point, exclusive of the alleged $505,324.76 loan from Bellomy–Lawson.

After the closing, the Debtor's financial statements show that it lost approximately $700,000 in the last 7 months of 1991; the Debtor's schedules filed in the main case indicate that its debts increased to approximately $3.5 million by November 1992, when an involuntary bankruptcy petition was filed against it.

### The Contentions of the Parties

The Liquidating Trustee, acting on behalf of the interest of all creditors, seeks to set aside the obligation to Bellomy–Lawson as fraudulent utilizing the "strong arm" powers under 11 U.S.C. § 544, together with the Uniform Fraudulent Transfer Act, *Fla.Stat.* § 726.105, asserting that the obligation in question was given for patently insufficient consideration and that the Debtor knew, at the time the obligation was incurred, that it intended to be in business and would incur

debts which it had no reasonable expectation of being able to repay from its own resources. The Liquidating Trustee also seeks to avoid the transfer of all sums which were paid to Bellomy–Lawson on account of the fraudulently-incurred obligation, whether such payments were made pre- or post-petition, and to recover same .for the benefit of the estate. According to the Liquidating Trustee's review of Bellomy–Lawson's proof of claim and amended proof of claim, filed in this proceeding and mathematical computation, the pre-petition payments amount to $267,802.00. A review of the DIP reports filed in this case reveals post-petition payments totaling $60,000.00. Thus the pre- and post-petition payments to Bellomy–Lawson amounted to $327,802.00. Thus, the Trustee, in addition to avoidance of the fraudulently-incurred debt, seeks judgment for the avoidance of the transfers in that amount.

Bellomy–Lawson, on the other hand, contends first, that the subject check was valid consideration in that the Debtor received some benefit from the disputed "loan", whether or not it was ultimately made good; that Cargo Aire subsequently did, in fact, make the check good; that the Debtor was "solvent" at all relevant times and the otherwise—fraudulently incurred obligation and subsequent payments thereon should thus be immune from attack; that the Liquidating Trustee cannot pursue this cause of action, since it was not specifically provided for in the confirmed Liquidating Plan and/or that a previous "settlement" made with the then-Debtor-In-Possession and ratified by a court order which was subsequently vacated, should bar any recovery in this action. Bellomy–Lawson's contentions are without merit.

### Prior Proceedings; Judicial Notice; Estoppel

At the outset, it must be noted that virtually all of the issues extant in this portion of this adversary proceeding were ventilated at considerable length in two evidentiary hearings held on November 17, 1994 and January 5, 1995 in connection with the Liquidating Trustee's motion in the main case under F.R.B.P. 9024 to set aside an earlier order of

this Court dated May 19, 1993, wherein the DIP and Bellomy–Lawson had agreed upon the amount of their secured claim and reset the payment schedule thereof. In the course of those two evidentiary hearings, testimony was taken from Ottosen; Charles A. Lawson; James S. Feltman, the Liquidating Trustee; William Seidle; and an accounting expert for Bellomy–Lawson. An affidavit had been submitted signed by Dan Wirth, who, with Ottosen, was a principal of Cargo Aire, and an officer of both Cargo Aire and the Debtor. Ottosen, too, had submitted an affidavit which was filed, and was virtually identical to that of Wirth. Wirth did not testify at the evidentiary hearings.

■ The Court has gained a substantial factual knowledge of this matter through the pleadings, testimony and documents presented by the Liquidating Trustee/Plaintiff herein and Bellomy–Lawson in connection with the Rule 9024 Motion. Various factual matters have already been decided adversely to Bellomy–Lawson and Seidle therein. Now, on this Motion for Summary Judgment, the Court has the right to take notice of its own files, records and experience in the case, and has no duty to "grind the same corn a second time". *Aloe Creme Laboratories, Inc. v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir. 1970). In *Aloe Creme Laboratories, Inc.*, the district court in a summary judgment setting, had concluded that no material facts were in actual good faith dispute inasmuch as the relevant issues had previously been decided adversely to the Plaintiff by reason of a judgment entered in another case brought by the same Plaintiff before the same Judge. Since the issues were substantially the same as those which had been recently decided, the Court was bound by its decision in the earlier case.

### No Consideration

■ Here, based upon the testimony, exhibits, court file in the main case and the prior ruling, the Court finds that there is no material fact at issue which would preclude summary judgment. In the Amended Order Granting Liquidating Trustee's Motion Pursuant to Rule 9024, Including Findings of Fact And Conclusions of Law dated April 20,

1995 ("Amended Order"), the Court made specific findings that check No. 1001 from Cargo Aire Group, Inc., had never been made good and that there was no consideration given for the note and mortgage.

In their motion for summary judgment, Bellomy–Lawson argue that even though Check 1001 was not presented for payment or deposited, that does not mean the sums represented by the check were never paid. Bellomy–Lawson contends the check was, in essence, re-written in pieces and handed to Aerial Transit. Accordingly, Aerial did not need to present the check in order to get the benefit of the transfers because the funds were at its disposal. In support of this reasoning, Bellomy–Lawson point out to the Court that a check is dishonored when presentment is made and due acceptance or payment is refused. *Fla.Stat.* § 673.5021. Bellomy–Lawson also note that if an uncertified check is taken for an obligation, the obligation is suspended until dishonor of the check. *Fla.Stat.* § 673.3101(2). Bellomy–Lawson conclude that because Aerial chose not to present Check 1001 for payment, Check 1001 is not a dishonored or worthless check even though it was drawn on a bank account with only $10.00 on deposit. Therefore, Bellomy–Lawson argue that because Check 1001 was a promise to pay, suspended an obligation, and was not dishonored, Aerial received consideration for the mortgages on the two DC–6 aircraft. However, the Court is not persuaded by Bellomy–Lawson's argument and will not alter its finding of no consideration contained in the Amended Order.

The Court did not decide any issues pertaining to solvency in the Rule 9024 matter, however, leaving such issues to this adversary proceeding. Therefore the next issue to address is the proper standard to be applied.

### Unreasonably Small Capital; Incurring Debts Beyond Ability to Pay

The relevant counts of the adversary proceeding as against Bellomy–Lawson are brought pursuant to 11 U.S.C. § 544, the "strong arm powers", whereby a trustee enjoys all of the rights and remedies available to a so-called "perfect lien creditor"; that is,

one who has a perfected lien on all assets of the debtor as of the date of the filing of the petition for bankruptcy relief. Section 544 allows the trustee to utilize available state law for the purpose of avoidance of various transactions. Here, the applicable state law is *Fla.Stat.* § 726.105, which provides, in relevant part that:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation.....

   b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor.

   1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

   2. Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

Thus, in order to invalidate the fraudulently incurred obligation as well as the alleged security interest flowing therefrom, it is incumbent upon Feltman to show (a) lack of consideration; and either (b) that the Debtor was engaged or about to engage in a business for which its remaining assets were unreasonably small, or in the alternative (c) that the Debtor intended to incur, or believed (or reasonably should have believed) that it would incur debts beyond its ability to pay as they came due.

■ The Court has already held that there was no consideration for the mortgage. Similarly, the undisputed facts demonstrated that the Debtor, at the time of closing, knew full well that it had no receivables, no cash, no liquid assets, heavy short term debt, and no means of paying it. This is amply demonstrated by Mark Ottosen's testimony at the 9024 hearing wherein he claimed that Cargo Aire had assumed the necessity of injecting upward of $1.2 million into the business to

turn it around and reach the break even point, [without considering the supposed $505,324.76 represented by check No. 1001 (transcript of 9024 hearing, November 17, 1994, P. 99 L4–20) ]. The books and records of the Debtor did not reflect the receipt of even the $1.2 million that Ottosen had testified was required (transcript of 9024 hearing, November 17, 1994, P. 45 L9–12). The exhibits from the 9024 hearing demonstrate that the Debtor's business lost about $700,-000 in the 7 months after the closing, and the Debtor's bankruptcy schedules show that, far from turning around, it continued to amass more debt until the involuntary petition was filed. Therefore, Plaintiff has amply demonstrated the factual prerequisite for a constructively fraudulent obligation and conveyance under *Fla.Stat.* § 726.105(1)(b).

■ By way of contrast, Bellomy–Lawson has asserted that the Debtor was "balance sheet" solvent both before and after the subject transaction. Even assuming *arguendo* this to be the case, "balance sheet" solvency is not the proper test under *Fla.Stat.* § 726.105(1)(b)(1) or (2). "Balance sheet" solvency only comes into play if a claim is made to avoid a fraudulent transfer that was made with actual intent to hinder, delay or defraud under *Fla.Stat.* § 726.105(1)(a).

Although it is possible that Cargo Aire may or may not have had sufficient assets to continue its business of owning the Debtor on an ongoing basis, the record is clear that, the Debtor itself had no resources from which it could pay its debts, absent a massive capital infusion from Cargo Aire. Thus, Plaintiff has proven the elements necessary to the avoidance of the $505,324.76 debt as a fraudulently incurred obligation, and to the avoidance of the transfer of all sums received by Bellomy–Lawson on account thereof as fraudulent transfers.

### Amount Avoidable

The amount in dispute is readily susceptible of computation by review of documents on file with the Court, and the Court notes that Bellomy–Lawson has offered neither affidavit nor legal argument to suggest that the Plaintiff's computation is wrong. A review of the terms of the promissory note together with Bellomy–Lawson's filed proof of claim would indicate, as a matter of calculation, that Bellomy–Lawson received pre-petition payments against the fraudulent obligation in the amount of $267,802.00. Similarly, review of the DIP reports filed with this court shows that the Debtor made post-petition payments to Bellomy–Lawson in the aggregate amount of $60,000.00. Thus, Plaintiff is entitled to recover the pre-and post-petition payments on the fraudulent obligation in the aggregate amount of $327,802.00 together with pre-judgment interest from the date the Plaintiff filed his amended complaint which sought avoidance of these transactions, at the same rate as fixed by law for post-judgment interest together with post-judgment interest as well.

### Affirmative Defenses not Otherwise Treated Herein

Bellomy–Lawson raises two other issues which have not already been dealt with herein: First, that an order of this Court in the main case dated May 19, 1993, which authorized a settlement between the Debtor and Bellomy–Lawson, allowed its claim in full and reset payment terms, is *res judicata* to the questions raised in this adversary proceeding and bars any further debate as to the underlying validity of the claim. That issue was dealt with through the evidentiary hearings previously referred to, and this Court's ruling and Amended Order wherein the previous order ratifying the alleged settlement was vacated in its entirety. The same order made specific findings that Cargo Aire's check No. 1001 had never been made good, that there was no consideration for the note and the mortgage, and implicitly, that the Liquidating Trustee had the right to pursue this matter notwithstanding the lack of a specific provision to that effect in the confirmed liquidating plan.

■ Generally, the "disclose it or lose it" line of cases is a judicial gloss grafted upon confirmation statutes in order to avoid situations where a reorganizing debtor gains the endorsement of a particular creditor who helps to confirm its plan, and then the debtor afterward reverses field and seeks to sue the creditor on a previously undisclosed claim

which pre-dated the reorganization, e.g. lender liability.

Two of the leading cases demonstrating the estoppel concept involved are *Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570 (1st Cir.1993); and *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3rd Cir.1988), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). In *Payless*, the plaintiff had filed for Chapter 11. It never even suggested that the defendant Alberto Culver was responsible for its financial woes. A plan was confirmed. Thereafter, Payless sued Alberto Culver, alleging that its bankruptcy was a "direct result of the conspirational acts of defendants." As the Court said:

> "even a cursory examination of the claims shows that defendants should have figured in both aspects of the Chapter 11 proceedings and that Payless could not have thought otherwise ... assuming that there is validity in Payless' present suit it has a better plan. Conceal your claims; get rid of your creditors on the cheap, and start over with a bundle of rights. This is a palpable fraud that the Court will not tolerate, even passively ... [citation omitted] Payless, having obtained judicial relief on the representation that no claims existed, can not now resurrect them and obtain relief on the opposite basis." *Payless* at 571.

In *Oneida Motor Freight*, roughly the same situation occurred. The debtor obtained confirmation for its own benefit, and thereafter sought to pursue United Jersey Bank under theories of lender liability after United Jersey had been lulled into approving the reorganization plan based on the disclosures made for that purpose, which gave no inkling of the claim.

Here, the plaintiff is not a debtor seeking to hide assets in the form of choses in action for its own profit; the plaintiff is a liquidating trustee appointed for the express purpose of investigating the finances of the business, isolating potential claims, and pursuing them for the benefit of creditors, while liquidating the other assets, also for the benefit of the creditors. In this respect, he is no different than any other bankruptcy trustee. The plan was confirmed without disclosure since everyone at the time recognized it to be simply an adjunct to the liquidation procedure. The facts as previously shown at the Rule 9024 hearing were that Feltman had no idea that he had a claim against Bellomy–Lawson, until he found the undeposited Check # 1001 which has supposedly represented the "loan" against the aircraft. He is not the dishonest debtor seeking to profit from his own failure to disclose castigated in *Payless* and *Oneida*.

Even were the Plaintiff's claims not disclosed adequately prior to confirmation, these post-confirmation proceedings are proper because, as was the case in *Matter of Texas General Petroleum Corp.*, 40 F.3d 763 (5th Cir.1994), *cert. denied*, sub nom. *McFarland v. Leyh*, — U.S. —, 115 S.Ct. 2002, 131 L.Ed.2d 1003 (1995), and contrary to *Harstad v. First American Bank*, 39 F.3d 898, 902 (8th Cir.1994), their Plan "provided for 'the retention and enforcement [of that claim ...] by the Plaintiff.'" Here, the plan generally provides that the trust *res* includes all potential avoidance actions. Specifically:

3.6 *"The Liquidating Trust.*

> 3.6.1 ... James S. Feltman is hereby designated as Liquidating Trustee ... for the purpose of receiving all of the Trust Property and Property of the Debtor and the bankruptcy Estate and any other consideration to be received by the Trust Creditors ... including, but not limited to the following Trust Property:

> 3.6.1.1 All causes of action, rights, claims, demands against third parties, investors, individuals or insiders that the Debtor and the bankruptcy Estate own, or have an interest in, or can assert in any fashion since its formation, including all causes of action belonging to the Debtor and the bankruptcy Estate, whether Pre–Petition or Post–Confirmation and whether pending prior to Confirmation, including but not limited to, actions under Sections 542, 543, 544, ... and 553 of the Code to recover assets for the estate and the benefit of the Creditors; and any interest in properties or entities which the Debtors

and the bankruptcy Estate own or control."

It is thus clear that the Plan reserved to the Liquidating Trustee all choses of action including those of the nature presented by this adversary proceeding.

## CONCLUSION

The Court being otherwise fully advised in the premises, it is

**ORDERED** and **ADJUDGED** that Summary Final Judgment is entered in favor of the Plaintiff, James S. Feltman, as Liquidating Trustee and against the Defendants, Herrol W. Bellomy and Agnes E. Bellomy as Trustees under the Herrol W. Bellomy Trust Agreement dated December 15, 1987 as amended; Agnes E. Bellomy and Herrol W. Bellomy as Trustee under the Agnes E. Bellomy Trust Agreement dated December 15, 1987, as amended, and Charles A. Lawson (collectively referred to herein as Bellomy–Lawson) jointly and severally for the following relief:

a. For avoidance of the constructively fraudulent obligation owed by the Debtor to the Bellomy–Lawson defendants in the amount of $505,324.76;

b. For avoidance of the transfer of a security interest in two DC-6 aircraft to the Bellomy–Lawson defendants as collateral for the fraudulently-incurred obligation;

c. For $327,802.00 together with interest from May 20, 1994, (the date of filing of the Amended Complaint herein) at the rate of 5.02%; and for reimbursement of costs incurred in connection with the prosecution of this adversary proceeding against these defendants, which will be set at a later date for all of which let execution issue; and it is further

**ORDERED** that the motion of the Bellomy–Lawson defendants for Summary Judgment dismissing this adversary proceeding is denied.

**DONE** and **ORDERED**.