In the Matter of PETROWAX
P.A., INC., Debtor.

PETROWAX P.A., INC., Plaintiff,

v.

C & C PETROLEUM & CHEMICALS GROUP, INC., Peter V. Snyder, Michael Chehowski and Martin P. Clark, Defendants.

Bankruptcy No. 92–210 (HSB).
Adversary No. 95–71.

United States Bankruptcy Court,
D. Delaware.

July 31, 1996.

Michael B. Joseph, Ferry Joseph & Fink, P.A., Wilmington, DE, Sandra E. Mayerson, McDermott, Will & Emery, New York City, for Plaintiff.

Neil B. Glassman, Charlene D. Davis, Bayard, Handelman & Murdoch, P.A., Wilmington, DE, for Defendants.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Chief Judge.

In this adversary proceeding, the defendants C & C Petroleum & Chemicals Group, Inc., Peter V. Snyder, Michael Chehoski and Martin P. Clark move to dismiss the complaint of Petrowax PA, Inc. pursuant to Bankruptcy Rules 7012(b)(1) and 7012(b)(6). This is the court's Opinion on the motion.

### I. *Facts*

The following facts are not in dispute and are appropriate to consider. Petrowax filed its Chapter 11 petition in this court on February 25, 1992. No trustee was appointed. The second amended plan was confirmed on May 19, 1995. The plan was based upon the acquisition of the debtor Petrowax by a newly-formed entity, MSC, which would purchase all the common stock of Reorganized Petrowax. Second Amended Plan, Article 8. The effective date was no later than June 30, 1995. This adversary proceeding was filed on July 21, 1995.

### II. *The Complaint*

In its complaint, the debtor Petrowax alleges the following. Prior to October 1994, Petrowax sold petroleum-based wax products to C & C Petroleum Chemicals Group, Inc. Pursuant to an October 31, 1994 agreement, C & C became a sales agent for Petrowax. In November 1994, pursuant to the agreement, C & C started collecting payments from Petrowax's customers. C & C, however, did not forward these payments to Petrowax, but instead used the money for its own financial obligations. The total amount of money converted to C & C's own use was in the hundreds of thousands of dollars. Furthermore, the individual defendants were in control of C & C, utilized C & C as an alter

ego, used the monies for their own benefit, and are personally liable to Petrowax for the converted monies. In five claims, the complaint seeks an accounting and recovery of these monies with interest, as well as punitive damages. Claims one and two are based upon 11 U.S.C. § 542(a) and 11 U.S.C. § 542(b), respectively. Claims three through five are based upon breach of contract, conversion, and fraud, respectively. The complaint seeks recovery on behalf of "Petrowax PA, Inc., debtor and debtor-in-possession." In lieu of an answer, the defendants filed a motion to dismiss.

## III. *Discussion*

### A. *Standard*

The defendants move to dismiss claims one and two for lack of standing. Where standing is challenged on the basis of the pleadings, the court will accept as true all material allegations of the above complaint, and construe the complaint in favor of the plaintiff Petrowax. *Pennell v. San Jose,* 485 U.S. 1, 7, 108 S.Ct. 849, 855, 99 L.Ed.2d 1 (1988). Both parties also refer to the language of the confirmed plan, which is not in dispute and will be considered. On this record, the defendants maintain that Petrowax lacks standing to bring an action under section 542(a) or 542(b) of Title 11.

### B. *Petrowax Lacks Standing to Assert the Bankruptcy Causes of Action*

Section 542(a) states:

(a) [A]n entity ... in possession, custody, or control, during the case, of property that the trustee may use ..., shall deliver to the trustee, and account for, such property or the value of such property.

Section 542(b) states:

(b) [A]n entity that owes a debt that is property of the estate ..., shall pay such debt to ... the trustee.

Section 542 is entitled "Turnover of property to the estate," and a cause of action under either of the above subsections is sometimes referred to as a "turnover action."

In the Petrowax case no trustee was appointed, and the alleged turnover ac-

tions are property of the estate and belong to the debtor in possession prior to confirmation. 11 U.S.C. § 541(a); 11 U.S.C. § 1107(a). Pursuant to 11 U.S.C. § 1141(b), the estate vests in the reorganized entity at the time of confirmation of a plan. Thus normally, the former debtor in possession loses the right to bring turnover actions after the effective date of the plan. However, section 1123(b)(3)(B) of Title 11 states how these turnover actions may be retained by a reorganized debtor:

Subject to subsection (a) of this section, a plan may—

\* \* \* \* \* \*

(3) provide for—

(A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or

(B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest.

The defendants' argument is quite simple—the plan did *not* provide for the retention and enforcement by the debtor Petrowax of the two section 542 claims raised in the complaint, and thus Petrowax has no standing.

In response, Petrowax argues that the plan did provide for the retention of these claims, in Article 13.01.4. Article 13 of the plan is entitled "Retention of Jurisdiction." The prefatory paragraph, Article 13.01, states:

[T]he court shall retain exclusive jurisdiction of all matters arising out of, and related to, the Case and this Plan pursuant to, and for the purpose of, sections 105(a) and 1142 of the Bankruptcy Code, and for ... the following purposes.

Article 13 then lists 13 purposes, each in a separate subsection. The fourth subsection is Article 13.01.4, which states: "to hear and determine any and all Avoidance actions and turnover orders." Petrowax believes this clause somehow satisfies the retention requirement of 11 U.S.C. § 1123(b)(3)(B). It does not. Petrowax's complaint is not an avoidance action. It is also not a turnover order. Most importantly, Article 13.01.4 re-

tains subject matter jurisdiction for the court. It does not establish retained rights of the debtor.

Petrowax essentially concedes these points, but argues on the basis of three decisions that a retention of jurisdiction clause in the plan such as the one here is sufficient to establish the debtor's right to bring such a cause of action post-confirmation. First, Petrowax cites *Temex Energy v. Hastie & Kirschner, P.C. (In re Amarex)*, 96 B.R. 330, 332 (W.D.Okla.1989), in which the court denied a motion to dismiss an adversary that asserted preferential transfer claims. The Amarex plan, however, specifically "preserved and retained for enforcement by the Reorganized Amarex" all preferential transfer claims. The second case cited by Petrowax, *Centennial Indus. v. NCR Corp. (In re Centennial)*, 12 B.R. 99 (Bankr.S.D.N.Y.1981), was decided under the Bankruptcy Act and merits no discussion.

In the third case, *J.E. Jennings, Inc. v. William Carter Co. (In re J.E. Jennings, Inc.)*, 46 B.R. 167 (Bankr.E.D.Pa.1985), the court denied a motion of the defendant for judgment on a complaint that asserted a preferential transfer and that was filed after the effective date of the plan. This decision is of limited help, as the court never addressed the section 1123(b)(3) argument, and in part relied upon *Centennial* and other Bankruptcy Act decisions.

A recent case that does address the section 1123(b)(3) argument, and is recognized by both Petrowax and the defendants as a leading case for this court to consider is *Harstad v. First American Bank*, 39 F.3d 898 (8th Cir.1994). After confirmation, the *Harstad* debtors filed a complaint against the defendant asserting several preferential transfers. The *Harstad* plan contained a section that retained jurisdiction "for the following purposes: [D]etermination of all causes of actions [sic] between Debtors and any other party, including but not limited to any right of Debtors to recover assets pursuant to the provisions of the Bankruptcy Code." *Id.* at

902. The *Harstad* court correctly reasoned that retaining jurisdiction "is a far cry" from reserving to the debtors a right to bring post-confirmation claims to recover preferences, and that the quoted language did not equate to the retention of a claim as required by 11 U.S.C. § 1123(b)(3). *Id.* at 902.[1] The *Harstad* court dismissed the complaint for lack of standing.

Petrowax attempts to distinguish *Harstad*—the court finds these attempts unavailing. More to the point, this court independent of that decision holds that the language of Petrowax's confirmed plan does not satisfy the retention requirements of 11 U.S.C. § 1123(b)(3).

■ Petrowax also argues that the order confirming the plan contains language retaining the right for the debtor to bring the claim. It is not necessary to consider the specific language contained in the order, as that language does not appear in the plan. Section 1123 requires such a retention provision to be placed in the plan, not the order. It is the plan (and disclosure statement) which was circulated to all the creditors of Petrowax and confirmed pursuant to 11 U.S.C. § 1129. A confirmation order may not be used to circumvent a plan deficiency of the type here. Petrowax has no standing to bring an action under section 542(a) or 542(b) of Title 11. Claims one and two are dismissed with prejudice.[2]

## C. *This Court Does not Have Jurisdiction Over the Remaining Claims*

■ The remaining complaint now contains claims three through five: breach of contract, conversion, and fraud. These claims are all based on state law. The defendants move to dismiss these counts for lack of subject matter jurisdiction. On a motion to dismiss for lack of subject matter jurisdiction, the record consists of the pleadings and evidence submitted to the court. Petrowax has the burden to show that the court has subject matter jurisdiction. *Millipore Corp.*

1. The *Harstad* court also criticized the *Jennings* reasoning as "render[ing] § 1123(b)(3) a nullity." 39 F.3d 898, 902–902.

2. The defendants' alternative arguments that both claim one and two fail to state a claim upon which relief can be granted need not be addressed.

*v. University Patents, Inc.,* 682 F.Supp. 227, 231 (D.Del.1987). Here, the only evidence outside the pleadings that the court need consider is the confirmed plan itself.

 For this court to have subject matter jurisdiction over a claim, as a threshold matter, the plan must retain subject matter jurisdiction over that type of claim. *See, e.g., MAI Systems v. C.U. Technologies (In re MAI),* 178 B.R. 50, 53 n. 2. (Bankr.D.Del. 1995). Article 13 of the plan lists the types of matters over which the court retains jurisdiction. Petrowax, however, does not even argue that one of the thirteen subsections of Article 13 purports to retain subject matter jurisdiction over the breach of contract, conversion, or fraud claims, and this court independently finds that the plan did not retain subject matter jurisdiction over any of these three claims. Petrowax does argue that this court *could have* retained jurisdiction over these claims, which is an irrelevant issue since the plan did not so provide. This court lacks subject matter jurisdiction over claims three through five of the complaint.

### IV. *Conclusion*

An order is attached in accordance with this Opinion.

### ORDER

AND NOW, July 31, 1996, for the reasons stated in the attached Memorandum Opinion,

IT IS ORDERED THAT:

1. Claims one and two are dismissed with prejudice because the plaintiff lacks standing.

2. Claims three, four, and five are dismissed without prejudice for lack of subject matter jurisdiction.

3. The motion of the defendants to dismiss the complaint is **GRANTED.**