In re BURLINGTON MOTOR HOLD-INGS, INC., Burlington Motor Carriers Inc., Spirt Transportation Inc., BNMC Real Estate Inc. and BMC Equipment Leasing Inc., Debtors.

Burlington Motor Carriers Inc., Plaintiff,

v.

MCI Telecommunications, Defendant.

Bankruptcy Nos. 95–1559 to 95–1563. Adversary No. A–97–731.

United States Bankruptcy Court, D. Delaware.

April 14, 1999.

Tobey M. Daluz, Ben Burke Howell, Philadelphia, PA, Karen C. Bifferato, Wilmington, DE, Robert M. Marino, Washington, DC, for Plaintiff.

Hillary C. Steinberg, Daniel J. DeFranceschi, David W. Carickhoff, Jr., Thomas L. Ambro, William P. Bowden, Christopher S. Sontchi, and William L. Inden, Wilmington, DE, for MCI Telecommunications.

## MEMORANDUM OPINION [1]

JUDITH K. FITZGERALD, Bankruptcy Judge.

Before the court is the motion of the defendant MCI Telecommunications for reconsideration of an order of this court which denied defendant's motion to dismiss for lack of subject matter jurisdiction. After having reviewed the pleadings and briefs of the parties, considered the oral argument thereon, and studied the cases provided by the parties as well as research developed by the court, the court will grant the motion for reconsideration and dismiss the Complaint against MCI.

The motion alleges that (1) the Successor Corporation lacks standing to pursue this adversary, thereby denying this court subject matter jurisdiction; (2) the confirmed Plan (The Fourth Amended Joint Plan of Reorganization) does not comport with § 1123(b) of the Bankruptcy Code in that it fails to specifically retain jurisdiction to prosecute preference actions post-confirmation [2]; and (3) the order confirming the Fourth Amended Joint Plan cannot cure the deficiency under § 1123(b).

■ With respect to item (2), we previously ruled that the Plan and/or confirmation order entered in this case properly preserved preference actions to the Successor Corporation and provided appropriate notice to creditors that preference actions were transferred to the Successor Corporation. That ruling was made in seven adversary actions that were consolidated for argument on the issue. MCI was a party in one of the seven. The ruling was appealed by parties other than MCI.[3] MCI did not appeal but has filed a motion for reconsideration. Because the notice issue is on appeal, we will not revisit it at this time.

■ With respect to item (3), we note that confirmation orders often clarify and supplement plan provisions. Furthermore, all creditors and parties in interest received notice of the confirmation order and no appeal was taken. Therefore, the confirmation order is a final order of this court and is the law of the case.[4]

---

**1.** This Memorandum Opinion constitutes the court's findings of fact and conclusions of law.

**2.** In *Harstad v. First American Bank,* 39 F.3d 898, 902, n. 7 (8th Cir.1994), the court noted that only Congress and not the plan of reorganization can confer jurisdiction on the court.

**3.** *See* order entered November 24, 1998, at adversaries 97–493, 97–511, 97–933, 97–667, 97–592, and 97–901.

**4.** In *In re Petrowax P.A., Inc.,* 200 B.R. 538, 541 (Bankr.D.Del.1996), the court said "[a] confirmation order may not be used to circumvent a plan

deficiency". However, the court qualified this statement and limited it to the deficiency of the type found in that case. The plan provided for retention of jurisdiction over, *inter alia,* "Avoidance actions and turnover orders." *Id.* at 540. The court found that the complaint did not constitute either type of action and the debtor conceded the point. The instant case has no similar concession by the Successor Corporation. Moreover, we have previously determined that the confirmed plan contained language that preserved preference actions. Accordingly, we reject this argument.

Our jurisdiction is founded upon 28 U.S.C. § 1334(b) inasmuch as the preference avoidance action at issue, a creation of bankruptcy law, is within the matters enumerated in 28 U.S.C. § 157(b)(2)(F) as a core proceeding. *Cf., U.S. Trustee v. Gryphon at the Stone Mansion, Inc.,* 166 F.3d 552 (3d Cir.1999) (jurisdictional analysis under § 1334 is not changed by the limitation of § 1142(b)).

■ The other issue with which we are faced is whether the Successor Corporation has standing to pursue this preference action. The answer to that question rests on whether the Successor Corporation is a representative of the bankruptcy estate for purposes of enforcing the preference action and whether recovery would constitute a benefit to creditors. The statutory predicates are § 1123(b)(3)(B) and § 550(a). Section 1123(b)(3)(B) provides that, subject to 1123(a), the plan of reorganization may provide for "the retention and enforcement by ... a representative of the estate appointed for such purpose, of any such claim or interest." 11 U.S.C. § 1123(b)(3)(B). The Plan as confirmed on November 22, 1996, contains these provisions:

(1) Article 5, § 5.1 entitled "Consummation of Asset Purchase Agreement," states Debtors' obligation to transfer and assign to the Successor Corporation certain selected assets on the effective date.

(2) "Assets" are defined in § 1.15 as follows: "... collectively, all of the assets, property, interests and effects, real and personal, tangible and intangible, wherever situated, of the Debtors as of the Effective Date, including, without limitation, all claims and causes of action arising under the Bankruptcy Code or other applicable law, if any, including claims and causes

of action under Sections ... 547, ... 550, ...."

(3) The "selected assets" are defined in § 1.102 to include, *inter alia,* the same causes of action and claims under § 547 and § 550 of the Bankruptcy Code.

*Plaintiff's Amended Brief ...,* docket no. 25, at 4–5.

The confirmation order specifically vested the Successor Corporation with the rights and powers granted Debtors as Debtors–in–Possession under § 1107(a) of the Bankruptcy Code with respect to the allowance, treatment or avoidance of any claims or liens to be assumed by the Successor Corporation.[5]

Both the Plan and the confirmation order identify the Successor Corporation as (1) the entity to receive Selected Assets from Debtors as of the Effective Date (Plan at ¶ 5.1); (2) the successor in interest to Debtors (Plan at § 1.107); and (3) the entity "vested with the rights and powers granted the debtors, as debtors in possession under § 1107(a) of the Bankruptcy Code with respect to the ... avoidance of any claims ... to be assumed by the successor corporation as part of the plan ...." Confirmation Order ¶ 20 at 22—23. This language does not specifically designate the Successor Corporation as an estate representative appointed to settle or adjust any claim within the meaning of § 1123(b)(3)(A) and (B). However, given the clear intent in the asset purchase agreement and in the Plan to transfer the preference actions to the Successor Corporation and the provision of the confirmation order vesting the Successor Corporation with the rights and powers of Debtors–in–Possession, we conclude that the Successor Corporation and all parties in interest and creditors read the Plan as sufficient to designate the Successor Corporation as estate representative, within the meaning

---

**5.** MCI makes much of the fact that "Assets" are defined as the property and interests of Debtors "as of the Effective Date [of the Plan]". Defendant's Reply Brief at 8. MCI concludes that this language means that preference actions were not preserved pre-confirmation. We disagree. The Effective Date simply was the date by which the Plan was to take effect and the transfer of assets

to the Successor Corporation was to be accomplished. The confirmation order specifically provided that only avoidance actions that were unresolved as of the Effective Date could be transferred. Such an order makes perfect sense. The Debtors-in-possession could hardly transfer an action that no longer existed as of the Effective Date.

of § 1123(b)(3)(B), for purposes of enforcing Debtors' preference claims. *See In re Resorts International, Inc.*, 145 B.R. 412, 474–75 (Bankr.D.N.J.1990) ("appointment" of an estate representative under § 1123(b)(2)(B) is met when debtor and creditors agree in the confirmed plan). No one has argued to this court that the Successor Corporation was not designated as the estate representative.

■ Whether it has satisfied other requirements to establish its standing to prosecute preference claims is another matter. Section 550(a) provides:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section ... 547 ..., the trustee may recover, *for the benefit of the estate,* the property transferred, or, if the court so orders, the value of such property ....

11 U.S.C. § 550(a) (emphasis added). Under the terms of this Plan, any recovery by the Successor Corporation is not for the benefit of the estate as required by § 550(a). At the time of Plan confirmation, the preference actions were estate property and, therefore, were transferrable. The Debtors conveyed the preference actions and the consideration for the transfer was, *inter alia,* the Note executed by the Successor Corporation in favor of certain classes in the Plan that were unsecured creditor classes. Under the Note, the Successor Corporation unconditionally obligated itself to make payments to creditors. That is, regardless of whether or not the Successor Corporation succeeds in any cause of action (including preferences) purchased under the asset purchase agreement, it is required to pay Debtors' unsecured creditors under the Note. If payments are not made, the creditors' remedy is an action on the Note. The Plan does not delegate preference recoveries to the estate or list them as a source of funds designated to pay down the Note. Rather, any recovery of preferences in this case will benefit only the Successor Corporation. *See In re Resorts International, Inc.*, 145 B.R. at 475 (unsecured creditors must be benefitted by recovery).

The Successor Corporation argues that any recovery of preferential payments from MCI will directly benefit Debtors' creditors inasmuch as the Plan provides that the assets were transferred and assigned to the Successor Corporation "in exchange for the assumption by the Successor Corporation of certain liabilities and obligations to make distributions to holders of certain Allowed Claims pursuant to this Plan." *See Plaintiff's Amended Brief* ..., docket no. 25, at 9, n.13, quoting Fourth Amended Joint Plan of Reorganization at § 5.2(b). This argument is without merit. The benefit to creditors arises from the Successor Corporation's liability on the Note, not on its success in recovering preferences. The Successor Corporation's argument in this regard is akin to the debtors' argument in *Harstad v. First American Bank,* 39 F.3d 898 (8th Cir.1994), that creditors would be benefitted because the debtors would be better able to fund the plan. Without requiring a direct benefit to creditors in the form of distribution of any recovery, the court of appeals rejected this "indirect benefit"[6] argument on the ground that the plan could not have been confirmed if it had not been feasible and ruled that the plaintiff lacked standing. The same is true in the case at bench. The Plan was confirmed, fixing the Successor Corporation's obligation to give a Note in favor of creditors and to pay the note over a period of time.

---

**6.** In *In re P.A. Bergner & Co.,* 140 F.3d 1111 (7th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 409, 142 L.Ed.2d 332 (1998), the court held that § 550 requirements were satisfied where recovery of preferences indirectly benefitted creditors of the reorganized debtor. Although the benefit went directly to the reorganized debtor in *P.A. Bergner,* that entity was owned by the largest creditor group of the debtor. *In re Trans World Airlines,* 163 B.R. 964 (Bankr.D.Del.1994), presented a similar situation in that the prepetition creditors became postpetition shareholders in the reorganized debtor. Thus, any enhanced value to the reorganized TWA as the result of preference recoveries would benefit the creditors in their new capacity as shareholders. The court noted, however, that it would be improper to assume in all situations that *any* increase in wealth to a reorganized debtor benefits creditors.

878

The court determined that the Plan was feasible and nothing in that determination required or was conditioned on the avoidance, collection or distribution of preferences to creditors.

We also note that the Successor Corporation does not allege that preference recoveries will be paid to creditors. *See Harstad* (no distribution to creditors of money recovered and no proposed modification of plan to effect payment to creditors of amounts recovered). Thus, under § 550(a), the Successor Corporation is without standing to sue to avoid the alleged preference from MCI. Because the court is without subject matter jurisdiction when a party lacks standing due to the lack of a case or controversy or injury in fact upon which relief can be granted, this action must be dismissed. *Fair Housing Council of Suburban Philadelphia v. Montgomery Newspapers,* 141 F.3d 71, 74 (3d Cir.1998) (standing in the " 'case' or 'controversy' provision of Article III mean[s] that *in any case,* the plaintiff must be able to demonstrate" injury in fact that can be redressed by a favorable decision) (emphasis in original); Fed.R.Civ.P. 12(h)(3); Fed.R.Bankr.P. 7012(h)(3). *See also Clinton v. City of New York,* 524 U.S. 417, ——, 118 S.Ct. 2091, 2098, 141 L.Ed.2d 393 (1998) (federal court jurisdiction confined by Article III to "actual 'Cases' and 'Controversies' " and standing identifies disputes appropriately resolved through the judicial process).