In re ICE CREAM LIQUIDATION, INC. f/k/a Fieldbrook Farms, Inc., Debtor.

Ice Cream Liquidation, Inc. f/k/a Fieldbrook Farms, Inc., Plaintiff,

v.

Calip Dairies, Inc., Defendant.

Ice Cream Liquidation, Inc. f/k/a Fieldbrook Farms, Inc., Plaintiff,

v.

EPC of Virginia, Inc., Defendant.

Ice Cream Liquidation, Inc. f/k/a Fieldbrook Farms, Inc., Plaintiff

v.

Integrated Brands, Inc., Defendant.

Ice Cream Liquidation, Inc. f/k/a Fieldbrook Farms, Inc., Plaintiff

v.

Coolbrands International, Inc., Defendant.

Bankruptcy No. 01–34624 (LMW).
Adversary Nos. 03–3074(LMW), 03–3075(LMW), 03–3076(LMW), 03–3183(LMW).

United States Bankruptcy Court, D. Connecticut.

Jan. 3, 2005.

Barry S. Feigenbaum, Rogin, Nassau, Caplan, Lassman & Hirtle, LLC, Hartford, CT, for Plaintiff/Debtor.

Wanda Borges, Borges & Associates, LLC, Syosset, NY, for Plan Examiner.

Thomas D. Goldberg, Thomas J. O'Neil, Day, Berry & Howard, LLP, Stamford, CT, Ted A. Berkowitz, Patrick Collins, Farrell Fritz, P.C., Uniondale, NY, for Defendants.

*MEMORANDUM OF DECISION ON CONSOLIDATED MOTIONS TO DISMISS (TREATED AS MOTIONS FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 12(b))*

LORRAINE MURPHY WEIL, Bankruptcy Judge.

The matters before the court are the above-referenced motions to dismiss the above-captioned adversary proceedings (the "Proceedings") which motions (the "Motions"), pursuant to a prior order of the court, have been treated and disposed of as motions for summary judgment.

## I. BACKGROUND [1]

### The Bankruptcy Filing and the Sale

Fieldbrook Farms, Inc. (now known as Ice Cream Liquidation, the "Debtor") commenced this chapter 11 case by petition filed on September 21, 2001 (the "Petition Date"). Subsequent to the filing of that petition (and until plan confirmation), the Debtor remained in control of its assets and business affairs as a debtor in possession pursuant to Bankruptcy Code §§ 1107 and 1108.[2] On December 20, 2001, the court approved a sale (the "Sale") of all or substantially all of the Debtor's operating assets to Fieldbrook Acquisition, Inc. (*See* Case I.D. No. 210.) [3]

By order dated August 13, 2002, the court confirmed the Modified First Amended Joint Liquidating Plan of Reorganization (Case Doc. I.D. No. 394, the "Plan") which had been proposed by the Debtor and the Official Committee of Unsecured Creditors then serving in the case. It is uncontested that the Plan has become effective in accordance with its terms.[4]

### The Plan and Disclosure Statement

Pursuant to the Plan, the Debtor's assets remaining after the Sale were to be liquidated for the benefit of its creditors. By its terms, the Plan vests in the postconfirmation Debtor all of the Debtor's "property of every, nature, kind and description . . . ." (Plan § 5.2.) The Plan does not preserve the Debtor's preconfirmation status as a debtor in possession or create a postconfirmation bankruptcy estate.

The Plan confers certain "powers and duties" on the postconfirmation Debtor, including:

(a) to liquidate all of its property to cash;

.     .     .     .     .

(c) to prosecute any claims under Sections 544, 547, 548 and 550 [collec-

---

1. Citations herein to pleadings and documents filed in the chapter 11 case appear in the following form: "Case Doc. I.D. No. ____." Citations herein to pleadings and documents filed in a Proceeding appear in the following form: "Proceeding # 03–____ Doc. I.D. No. ____." All facts stated in this section have been taken either from (1) the Defendants' Local Rule 56(a)(1) Statement of Material Undisputed Facts (*see, e.g.,* Proceeding # 03–3074 Doc. I.D. No. 48) to the extent admitted in the Plaintiff's Local Rule 56(a)2 Statement (*see, e.g.,* Proceeding # 03–3074 Doc. I.D. No. 49) or (2) matters of record with this court of which the court may take judicial notice.

2. With certain exceptions not relevant here, a debtor in possession has all of the powers of a bankruptcy trustee. 11 U.S.C. § 1107(a).

3. One of the conditions of the Sale was that the Debtor change its name from "Fieldbrook Farms, Inc." The sale transaction closed on January 7, 2002. (*See* Case Doc. I.D. No. 348 (the "Disclosure Statement").) The Disclosure Statement was filed on July 2, 2002.

4. The Debtor alleges that the effective date of the Plan occurred on September 12, 2002. (*See* Case Doc. I.D. No. 422.)

tively, "Avoidance Actions"] of the [Bankruptcy] Code; [and]

. . . . .

(f) other powers and duties described in th[e] Plan or conferred upon it by operation of law.

(Plan § 5.2.)[5] Paragraph 4.1 of the Disclosure Statement states in relevant part: "The Debtor shall prosecute all preference and other actions to recover funds for the estate under Chapter 5[6] of the Bankruptcy Code ...." (Disclosure Statement at 25.) That language does not appear in the Plan. Plan § 8.1 authorizes the Debtor to "compromise or settle" any "Chapter 5 litigation." Neither the Plan nor the Disclosure Statement refers to actions brought pursuant to Bankruptcy Code § 542(b)[7] either by section number or as "turnover" actions nor does either document specifically refer to collection of the Debtor's outstanding accounts receivable (if any) or invalidation of setoffs. Neither the Plan nor the Disclosure Statement contain any description of the specific Avoidance Actions (or turnover actions, if any) intended to be within the scope of Plan § 5.2. Neither the Plan nor the Disclosure Statement identifies specific transfers, transferees or categories of transfers or transferees involved in actions to be brought by the Debtor postconfirmation. The Disclosure Statement indicates that holders of unsecured claims are unlikely to receive any distribution under the Plan

except for net recoveries on the Debtor's causes of action and that the Debtor had, as of the date of the Disclosure Statement, identified potential preference avoidance actions in the aggregate amount of approximately $1,500,000. (*See* Disclosure Statement at 11–12.) The Disclosure Statement further states that, as of the date of the Disclosure Statement, "the Debtor's counsel and consultant are developing the information necessary to identify and prosecute additional avoidance actions." (*See id.*)

### Relevant Scheduled Claims

Eskimo Pie Corporation (f/k/a EPC of Virginia, Inc. "Eskimo Pie") was listed (under its former name) on the Debtor's originally filed Schedule F as the holder of undisputed claims in the amount of $21,795.20 and $82,611.87. (*See* Case Doc. I.D. No. 101 (Schedule F—Creditors Holding Unsecured Nonpriority Claims).) Integrated Brands, Inc. ("Integrated Brands") was listed on Debtor's originally filed Schedule F as the holder of undisputed claims in the amount of $124,528.23. (*See id.*) On April 2, 2004, the Debtor filed a Notice of Debtor's Amendment to Schedule F whereby the Debtor deleted from Schedule F the entries for claims of Eskimo Pie and Integrated Brands. (*See* Case Doc. I.D. No. 537, the "Notice".) The Notice stated that "Debtor is deleting these Creditors pursuant to 'pending set-

---

**5.** The Plan also provides for a "Plan Examiner" charged with, among other things, the investigation and prosecution (if appropriate and in the name of the Debtor) of all potential claims against the Debtor's insiders. (*Id.* § 5.3.)

**6.** Chapter 5 of the Bankruptcy Code includes the following relevant sections: Bankruptcy Code §§ 542, 544, 547, 548, 550 and 553.

**7.** Bankruptcy Code § 542(b) provides as follows:

Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.
11 U.S.C.A. § 542(b) (West 2004). Actions under Section 542(b) are commonly referred to as "turnover" actions.

offs on pre-petition accounts receivable' made within 90 days preceding commencement of this case," *id.* In accordance with Rule 1009(a) of the Federal Rules of Bankruptcy Procedure,[8] the relevant Defendants (as defined below) were served with a copy of the Notice (*see id.* (attached Certification)), and neither objected to the Notice nor moved to be restored to the Schedule F by way of further amendment.[9] Prior to the commencement of the Proceedings, the Defendants were not parties to any dispute before the court, nor has it been suggested that they participated in Plan negotiations.

### Debtor's Schedule B and Statement of Financial Affairs

It is uncontested that none of the claims asserted by the Debtor in any of the Proceedings are noted under item number 20 on the Debtor's Schedule B—Personal Property ("Other contingent and unliquidated claims of every nature ...") nor anywhere else on Schedule B. CoolBrands International, Inc. ("CoolBrands") claims that the relevant setoff was not listed on the Debtor's Statement of Financial Affairs.[10] (*See* Proceeding # 03–3183 Doc. I.D. No. 27 at 10–11.) However, the Debtor disputes that allegation. (*See* Proceeding # 03–3183 Doc. I.D. No. 29 at 3.) The SOFA listed preferences against Eskimo Pie and against Integrated Brands. The SOFA listed setoffs taken by Eskimo Pie and Integrated Brands. The SOFA does not mention accounts receivable. However, in Schedule B, the value of accounts

receivable is listed as $9,538,020.15, "total amount subject to adjustment for pending credits."

### The Calip Complaint

The Debtor, as plaintiff, commenced Adversary Proceeding # 03–3074 by the filing of a complaint (the "Calip Complaint") filed on May 22, 2003. Calip Dairies, Inc. ("Calip") is the defendant in that proceeding. In the sole count of the Calip Complaint, Plaintiff alleges that Calip was indebted to the Debtor in the amount of $109,441.00 on the Petition Date and that Calip attempted to effect an illegal setoff against that debt, such that the debt is still due and owing. (*See* Calip Complaint ¶¶ 10–11.) The Debtor further asserts that it can set aside the alleged illegal setoffs pursuant to Bankruptcy Code § 553 and recover the alleged debt from Calip pursuant to Bankruptcy Code § 542(b). (*See* Calip Complaint ¶ 12.) Other than the Debtor's assertion that the setoff occurred on September 20, 2001, was illegal and lacked mutuality, the Calip Complaint provides no other details regarding the alleged illegal setoff.

### The Eskimo Pie Complaint

The Debtor, as plaintiff, commenced Adversary Proceeding # 03–3075 by complaint (the "Eskimo Pie Complaint") filed on May 22, 2003. Eskimo Pie is the defendant in that proceeding. In the sole count of the Eskimo Pie Complaint, Plaintiff alleges that Eskimo Pie received certain cash payments from the Debtor in the aggregate amount of$68,863.37 which are

---

**8.** Rule 1009(a) provides in relevant part:

A ... schedule ... may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall give notice of the amendment to the trustee *and to any entity affected thereby.* On motion of a party in interest, after notice and a hearing, the court may order any ... schedule ... to be amended ....

Fed. R. Bankr.P. 1009(a) (emphasis added).

**9.** Accordingly, the court concludes that the referenced amendment is binding upon those Defendants. None of the Defendants filed proofs of claim in this case.

**10.** The Debtor's Statement of Financial Affairs (the "SOFA"), filed on November 5, 2001, appears in the record as a part of Case Doc. I.D. No. 101.

avoidable as preferences under Bankruptcy Code § 547(b). (*See* Eskimo Pie Complaint ¶¶ 10–13.) Other than providing the aggregate amount of the alleged cash payments and a range of dates during which they were allegedly made, the Eskimo Pie Complaint does not provide any other details regarding the alleged preference payments.

### The Integrated Brands Complaint

The Debtor, as plaintiff, commenced Adversary Proceeding # 03–3076 by complaint (the "Integrated Brands Complaint") filed on May 22, 2003. Integrated Brands is the defendant in that proceeding. In Count I of the Integrated Brands Complaint, the Debtor alleges that Integrated Brands received certain cash payments from the Debtor in the aggregate amount of $216,388.42 which are avoidable as preferences under Bankruptcy Code § 547(b). (*See* Integrated Brands Complaint ¶¶ 10–13.) Other than providing the aggregate amount of the alleged cash payments and a range of dates during which they were allegedly made, the Debtor does not provide any other details of the alleged preference payments.

In Count II of the Integrated Brands Complaint, the Debtor alleges that Integrated Brands was indebted to the Debtor in the amount of $986,761.64 on the Petition Date and that Integrated Brands attempted to effect illegal setoffs against that debt, such that the debt is still due and owing. (*See* Integrated Brands Complaint ¶¶ 14–15.) The Debtor asserts that it can set aside the alleged illegal setoffs pursuant to Bankruptcy Code § 553 and recover the alleged debt from Integrated Brands pursuant to Bankruptcy Code § 542(b). (*See* Integrated Brands Complaint ¶ 16.) Other than the Debtor's as-

sertion that the setoffs were illegal and lacked mutuality, the Integrated Brands Complaint provides no other details regarding the alleged illegal setoffs.

### The CoolBrands Complaint

The Debtor, as plaintiff, commenced Adversary Proceeding # 03–3183 by complaint (the "CoolBrands Complaint") filed on September 18, 2003. CoolBrands is the defendant in that proceeding.[11] In Count I of the CoolBrands Complaint, the Debtor alleges that it made certain prepetition transfers to CoolBrands in the aggregate amount of $1,381,484.43 which are avoidable as preferences under Bankruptcy Code § 547(b). (*See* CoolBrands Complaint ¶¶ 10–13.) Other than providing the aggregate amount of the alleged transfers, the CoolBrands Complaint does not provide any other details of the alleged preferential transfers.

In Count II of the CoolBrands Complaint, the Debtor alleges that CoolBrands was "involved in a series of setoffs that were illegal and lacked mutuality" pursuant to which CoolBrands "benefited [sic] by $1,381,484.43." (*See id.* ¶¶ 14–15.) The Debtor asserts that it can recover the $1,381,484.43 from CoolBrands pursuant to Bankruptcy Code §§ 542(b) and 553. (*See id.* ¶ 16.) Other than the Debtor's assertion that such setoffs were illegal and lacked mutuality, the Complaint provides no other details regarding the alleged illegal setoffs.

## II. THE MOTIONS

The Motion filed by Calip asserts the following grounds for dismissal:

(1) [the Debtor's] ... claims against Calip are barred by the doctrine of *res judicata* because the Debtor's confirmed

---

11. The defendants in each of the respective Proceedings are hereafter referred to collectively as the "Defendants."

plan of reorganization does not expressly reserve the right to pursue claims against Calip post-confirmation; (2) [the Debtor] ... lacks standing to assert its turnover claims against Calip because [the Debtor]..., as a reorganized debtor, is no longer a debtor in possession; and (3) [the Debtor's] ... turnover claims must be dismissed for failure to provide the necessary details of the alleged illegal setoffs giving rise to the debt allegedly owed by Calip to ... [the Debtor].

(Proceeding # 03–3074 Doc. I.D. No. 11.)

The Motion filed by Eskimo Pie asserts the following grounds for dismissal:

(1) [the Debtor's] ... claims against ... [Eskimo Pie] are barred by the doctrine of *res judicata* because the Debtor's confirmed plan of reorganization does not expressly reserve the right to pursue claims against ... [Eskimo Pie] post-confirmation; (2) [the Debtor] ... lacks standing to assert its preference avoidance ... claims against ... [Eskimo Pie] because [the Debtor] ..., as a reorganized debtor, is no longer a debtor in possession; and (3) [the Debtor's] ... preference avoidance claims must be dismissed for failure to provide the necessary details of the alleged preferential payments.

(Proceeding # 03–3075 Doc. I.D. No. 11.)

The Motion filed by Integrated Brands asserts the following grounds for dismissal:

(1) [the Debtor's] ... claims against Integrated Brands are barred by the doctrine of *res judicata* because the Debtor's confirmed plan of reorganization does not expressly reserve the right to pursue claims against Integrated Brands post-confirmation; (2) [the Debtor] ... lacks standing to assert its preference avoidance and turnover claims against Integrated Brands because [the Debtor] ..., as a reorganized debtor, is no longer a debtor in possession; and (3) [the Debtor's] ... preference avoidance and turnover claims must be dismissed for failure to provide (a) with respect to the preference avoidance claim, the necessary details of the alleged preferential payments and (b) with respect to the turnover claim under 11 U.S.C. § 542(b), the necessary details of the alleged setoffs giving rise to the debt allegedly owed by Integrated Brands to ... [the Debtor].

(Proceeding # 03–3076 Doc. I.D. No. 11.)

The Motion filed by CoolBrands asserts the following grounds for dismissal:

(1) [the Debtor's] ... claims against CoolBrands are barred by the doctrine of *res judicata* because the Debtor's confirmed plan of reorganization ... does not expressly reserve the right to pursue claims against CoolBrands post-confirmation; (2) [the Debtor's] ... claims are barred by the doctrine of judicial estoppel because Debtor failed to disclose the claims against CoolBrands in its schedules of assets and liabilities, statement of financial affairs or disclosure statement; (3) [the Debtor] ... lacks standing to assert its preference avoidance and turnover claims against CoolBrands because [the Debtor] ..., as a reorganized debtor, is no longer a debtor in possession; (4) the Plan does not contain any terms providing for retention and enforcements of turnover claims by the post-confirmation Debtor; (5) [the Debtor's] ... preference avoidance and turnover claims do not provide the necessary details of the alleged preferential payments or the alleged illegal setoffs giving rise to the debt allegedly owed by CoolBrands to ... [the Debtor] and (6) [the Debtor] ... failed to plead the required elements

for causes of action under 11 U.S.C. §§ 542(b) and 553.

(Proceeding # 03–3183 Doc. I.D. No. 7.)

The Motions came on for hearing before the court and, after the completion of oral argument, the court entered orders [12] consolidating the Motions for disposition and directing that they be treated and supported as motions for summary judgment pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure and the Local Civil Rule 56. In the course of briefing relevant issues, the Defendants raised a further affirmative defense premised on Bankruptcy Code § 502(d).[13] The Procedural Orders directed that such additional affirmative defense be treated as if it had been originally raised in the Motions.

The Motions now have been fully briefed and statements under Local Civil Rule 56 have been filed. The Motions now are ripe for disposition.

## III. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate only if the pleadings and submissions ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *The Andy Warhol Foundation for Visual Arts, Inc. v. Hayes (In re Hayes)*, 183 F.3d 162, 166 (2d Cir.1999). *See also* Fed. R.Civ.P. 56(c) (made applicable here by Fed. R. Bankr.P. 7056). The movant bears the burden of establishing the ab-

sence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("[T]he burden on the moving party may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case."). The court must view all ambiguities and draw all reasonable inferences in the light most favorable to the nonmovant. *See Novak v. Blonder (In re Blonder)*, 246 B.R. 147, 150 (Bankr.D.Conn.2000) (Krechevsky, J.). Ultimately, the role of the court is "not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## IV. ANALYSIS

### A. Section 542(b) Counts (Standing)

The Defendants argue that the Debtor has no standing to bring the Proceedings Counts (the "Section 542(b) Counts") seeking turnover pursuant to Bankruptcy Code § 542(b) because the postconfirmation Debtor is no longer a debtor in possession and, as a reorganized debtor, failed expressly to reserve its right in the Plan to bring a turnover action postconfirmation. The court agrees with the Defendants for the reasons set forth below.

██ As noted above, Bankruptcy Code § 542(b) provides in relevant part: "[A]n entity that owes a debt that is prop-

12. (*See* Proceeding # 03–3074 Doc. I.D. No. 24; Proceeding # 03–3075 Doc. I.D. No. 24; Proceeding # 03–3076 Doc. I.D. No. 24; Proceeding # 03–3183 Doc. I.D. No. 14, collectively, the "Procedural Orders").

13. Bankruptcy Code § 502(d) provides:

Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under sections 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section ... 547 [or] 548 ... of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section ... 542, 543, 550, or 553 of this title. ˙
11 U.S.C.A. § 502(d) (West 2004).

erty of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to ... the trustee ...." 11 U.S.C.A. § 542(b) (West 2004). Thus, on its face, Section 542(b) inures to the benefit only of the "trustee." As noted above, if no trustee is appointed, during the chapter 11 case prior to plan confirmation the debtor enjoys the status of debtor in possession with all the relevant powers of a trustee. However, that status ceases on the effective date of a confirmed plan and "normally, the former debtor in possession loses the right to bring turnover actions after the effective date of the [confirmed] plan," *Petrowax P.A., Inc. v. C & C Petroleum & Chemicals Group, Inc. (In re Petrowax P.A., Inc.),* 200 B.R. 538, 540 (Bankr.D.Del.1996). However, in this circuit it is well settled that a non-trustee may be authorized to bring an action under chapter 5 of the Bankruptcy Code for the benefit of creditors pursuant to an appropriate order of the Bankruptcy Court. *See, e.g., Glinka v. Murad (In re Housecraft Industries USA, Inc.),* 310 F.3d 64, 71 n. 7 (2d Cir.2002). Bankruptcy Code § 1123(b)(3)(B) contemplates just such an order in the form of an appropriate provision in a confirmed plan. *See Petrowax,* 200 B.R. at 540 ("[S]ection 1123(b)(3)(B) of Title 11 states how ... turnover actions may be retained by a reorganized debtor.").

■ Section 1123(b)(3)(B) provides in relevant part that "a plan may ... provide for ... the retention and enforcement by the debtor ... of any ... claim or interest [belonging to the debtor or to the estate]." 11 U.S.C.A. § 1123(b)(3)(B) (West 2004). Thus, if the Plan contains the requisite

provision, the Debtor has standing to assert the Section 542(b) Counts. However, if an adequate Plan provision is lacking, the Debtor lacks standing to bring such actions.

■ The court concludes that the Plan is lacking the requisite provision and that the Debtor lacks standing to bring the Section 542(b) Counts. The Plan makes no mention of Bankruptcy Code § 542, turnover actions, actions to recover accounts receivable or the invalidation of setoffs, although Plan § 5.2 specifically mentions Sections 544, 547, 548 and 550. The Debtor has, at various times in the Proceedings, relied on Plan § 5.2's authorization for the Debtor to "liquidate all of its property to cash," and Plan § 5.2's reference to "other powers and duties described in th[e] Plan or conferred upon it by operation of law," to supply the requisite Plan provision preserving the Section 542(b) Counts. The best either of those Plan references does is to create an ambiguity which must be construed against the Debtor. *See Harstad v. First American Bank (In re Harstad),* 155 B.R. 500, 510 (Bankr. D.Minn.1993), *aff'd,* 1994 WL 526013 (D.Minn. Jan. 20, 1994), *aff'd,* 39 F.3d 898 (8th Cir.1994) ("As with all contracts, any ambiguity that exists in the chapter 11 plan is interpreted against the drafter;" applying rule in Section 1123(b)(3)(B) context). *See also In re Collins,* 184 B.R. 151, 154–55 (Bankr.N.D.Fla.1995) ("The ambiguity in the Debtor's Plan created by the omission of express language concerning post-confirmation interest and the typographical error with respect to this claim must be construed against the Debtor.").[14]

---

14. The reference in Plan § 5.2 to the Debtor's power to "liquidate all of its property to cash" is too vague for this purpose. However, the Debtor also points to the reference in Plan § 8.1 to the Debtor's power to settle or compromise "Chapter 5 litigation" as an "other

power[ ] or dut[y] described in th[e] Plan" within the purview of Plan § 5.2. Even assuming that the power to "compromise or settle" necessarily includes the power to commence litigation, Section 8.1 still is ambiguous as to whether Section 8.1 refers to actions

For the reasons stated above, the court concludes that the Debtor lacks standing to bring the Section 542(b) Counts. Accordingly, the Section 542(b) Counts must be dismissed. *Cf. Petrowax, supra* (turnover action dismissed for lack of the requisite plan provision).[15]

### B. *Preference Counts (Res Judicata)*

The Defendants assert that the Preference Counts are barred by the *res judicata* effect of the confirmed Plan. The court disagrees for the reasons that follow.[16]

#### 1. *The Standard*

The Second Circuit has articulated the following standard for when the *res judicata* effect of a judgment bars a second action.

> In judging the preclusive effect of a prior judgment for res judicata purposes, we decide first, whether the holding constituted a final judgment on the merits, and then, whether the action was brought before a court of competent jurisdiction.

.    .    .    .    .

> [T]he doctrine bars relitigation not just of those claims which were brought in a prior proceeding, but of "any other ad-

missible matter" which could have been brought, but wasn't.

.    .    .    .    .

> [W]e note that the test for deciding sameness of claims requires that the same transaction, evidence, and factual issues be involved .... Also dispositive to a finding of preclusive effect, is whether an independent judgment in a separate proceeding would "impair or destroy rights or interests established by the judgment entered in the first action."

*Sure–Snap Corp. v. State Street Bank and Trust Co.*, 948 F.2d 869, 872–74 (2d Cir. 1991) (citations and footnote omitted).

#### 2. *Sure–Snap*

The controlling case on the issue of the *res judicata* effect of a confirmed plan is *Sure–Snap, supra.* In *Sure–Snap*, the Debtor (as plaintiff) filed a chapter 11 petition for the express purpose of restructuring its loan from the defendant banks. *Sure–Snap*, 948 F.2d at 870–71. Sure–Snap then filed a plan of reorganization and a disclosure statement which "originally contained a statement faulting State Street for 'forcing' Sure–Snap into bankruptcy," *id.* at 871. That statement "was

---

such as the Section 542(b) Counts. That is because the phrase "Chapter 5 litigation" is not a defined term in the Plan and could be interpreted merely as a reference to the materially incomplete list of chapter 5 causes of action (*i.e.*, the Avoidance Actions) contained in Plan § 5.2. Language in the Disclosure Statement (*see, e.g.*, Disclosure Statement § 4.1) even if otherwise adequate cannot satisfy Section 1123(b)(3)(B)'s requirement that the "retention and [right of] enforcement" be set forth in the Plan. In any event, that section's reference to "preference and other actions to recover funds for the estate ... under Chapter 5", even if potentially available to resolve the Plan ambiguity, does not resolve the Plan ambiguity because the Avoidance Actions do include "preference actions" *and* other chapter 5 actions (*e.g.*, fraudulent trans-

fer actions under Section 548) even if the Avoidance Actions do not include Section 542(b) actions. Moreover, as noted above, the Disclosure Statement makes no reference to turnovers, setoffs or the like.

15.  Accordingly, the court will analyze the Defendants' remaining arguments only with respect to the Preference Counts.

16.  The court having determined that the Plan has no *res judicata* effect upon the Preference Counts, it is unnecessary for the court to decide whether an appropriate Plan provision retaining postconfirmation rights with respect to the Preference Counts would constitute an "exception" to any such *res judicata* effect.

later deleted at the bank's request, and an amended disclosure statement, containing no reference to any prospective counterclaims or defenses against the banks, was filed with the court," *id.*

Prior to the confirmation hearing, Sure–Snap and one of its principals filed a complaint initiating an adversary proceeding against the banks, challenging the validity of the banks' liens.[17] *Id.* Based on that complaint, Sure–Snap and its principal filed objections to the banks' proofs of claim. The validity of the liens was upheld by the bankruptcy court and, on appeal, by the district court. *Id.* Thereafter (but prior to plan confirmation), Sure–Snap drafted—but did not file—an amended schedule alleging claims against the banks for "breach of contract, tortious interference, and fraud." *Id.* Following a hearing, the bankruptcy court confirmed the debtor's plan over the banks' objections. *Id.* The confirmed plan provided that Sure–Snap would satisfy its outstanding debts to the banks by transferring its Vermont facility to one of the banks. *Id.*

After plan confirmation, Sure–Snap (a) filed its amended schedule stating claims against the banks and (b) moved to modify the confirmation order so as to preserve Sure–Snap's right to bring outstanding causes of action that had not been raised in the bankruptcy case. *Id.* The bankruptcy court denied that motion as well as two related motions to reconsider. *Id.* Subsequently, Sure–Snap and its principals brought a separate action against the banks in district court for damages caused by the banks' alleged predatory lending practices. *Id.* at 872. The district court dismissed the action pursuant to the doctrine of *res judicata*, and the matter came before the Second Circuit on appeal. *Id.*

The Second Circuit concluded that all of the elements for preclusion under the doctrine of *res judicata* had been met. On the issue of the "sameness of claims," the court concluded that the plan of reorganization and the contested confirmation hearing involved a consideration of the same issues that were raised by the plaintiffs in the district court action:

> The formal bankruptcy hearing, confirming as it did Sure–Snap's plan of reorganization and schedule of repayment, did necessitate preclusion of the lender liability action, as the claims premising Sure–Snap's petition for reorganization, and those alleging predatory banking practices, were *integrally related* . . . .

> Despite [the plaintiffs'] excessively narrow characterization of the bankruptcy hearing as a proceeding of limited effect determining only the banks' *right* to be paid, it is evident that the focus of contention and the basis for scheduling [of repayment] in that hearing encompassed the entire lender-debtor relationship . . . .

*Id.* at 874 (citations omitted; first emphasis added).

Based on the above, the court determined that the cause of action at issue in the bankruptcy court was "substantially the same" as the one later brought in district court. *Id.* at 875. The court then considered the second prong of the Second Circuit's *res judicata* test: "whether allowing Sure–Snap a separate judgment on the merits of its lender liability claims, would impair, destroy, challenge, or invalidate the enforceability or effectiveness of the original reorganization plan." *Id.* at 875–76. As to this requirement, the court concluded as follows: "Had the bankruptcy court found merit in [plaintiffs'] . . . lender

---

**17.** The plaintiffs argued that the subject loans    were unauthorized under state law. *Id.*

liability claims, it probably would have structured a different disposition of Sure–Snap's assets and schedule of payments." *Id.* at 876. Accordingly, the court held that the plaintiffs' suit in district court was barred by the *res judicata* of the confirmed plan.

### 3. *Application of Law to Facts*

■ The court concludes that the Preference Counts are not precluded by the confirmed Plan pursuant to the doctrine of *res judicata* for two reasons. First, the "sameness of claims" test is not satisfied. Second, the necessary "vitiating effect" (*Sure–Snap*, 948 F.2d at 875) is not present.[18]

With respect to the "sameness of claims" test, the *Sure–Snap* test is whether the claims against the creditor and the claims premising the chapter 11 case are "integrally related," *Sure–Snap*, 948 F.2d at 872. The court concludes that the *Sure–Snap* test for "sameness of claims" is not met here. For example, in *Sure–Snap* the souring of the Debtor's relationship with the banks caused the chapter 11 filing. Here, neither side argues that such was the case. In *Sure–Snap*, the chapter 11 case was all about restructuring the banks' loan. Here, the case originally was primarily about rehabilitating the Debtor's business and subsequently about the Sale. In *Sure–Snap*, the validity of the banks'

liens had been litigated prior to confirmation. Here, the Defendants had not been a party to any pre-confirmation litigation. In *Sure–Snap*, the banks were placed by name in their own separate plan classification. Here, the Defendants (to the extent, if any, that they will be creditors) will be unnamed members of the sole Plan class of creditors (*i.e.*, a class comprised of all allowed general unsecured claims). In short, confirmation of the Plan did not require adjudication of the prepetition transactions between the Debtor and the Defendants. *Accord Cohen v. TIC Financial Systems (In re Ampace Corp.)*, 279 B.R. 145, 155 (Bankr.D.Del.2002) (no *res judicata* effect because cause of action not integrally related to plan confirmation); *In re S.N.A. Nut Co.*, 215 B.R. at 1010 (same).

With respect to the "vitiating effect" that a judgment against the Defendants on the Preference Counts would have on the confirmed Plan, the court concludes that such judgment would not "vitiat[e]" the Plan. In *Sure–Snap*, the "payment schedule" which would have been vitiated was a plan provision which surrendered the Vermont facility to one of the banks in full satisfaction of the banks' allowed secured claims. Judgment against the banks in the lender liability suit would have rendered that provision nonsensical. Here, the only payment schedule at issue is the Plan

---

**18.** The court assumes but does not decide that the Defendants were parties to the chapter 11 case for *res judicata* purposes. *Compare DuVoisin v. Anderson (In re Southern Industrial Banking Corp.)*, 66 B.R. 349, 359–362 (Bankr.E.D.Tenn.1986) (Prospective rights to file claims held by transferees against whom preference actions were brought were not "contingent claims" within the meaning of the Bankruptcy Code and, hence, transferees were not creditors entitled to notice and opportunity to participate in proceedings resulting in confirmation of the debtor's reorganization plan.) *with In re Dunes Hotel Associates*, No. C/A 94–75715, 1997 WL 33344253, at *12 (Bankr.D.S.C. Sept. 26, 1997), *aff'd*, 245 B.R. 492 (D.S.C. 2000) (contra). Although the point appears to be contested, the court further assumes (but does not decide) that the Preference Counts could have been brought preconfirmation as a practical matter. However, the question is not whether the Preference Counts *could* have been brought at or before plan confirmation, but, rather, whether they "*must* have been determined by, or should have been part of [the plan confirmation proceedings]," *S.N.A. Nut Co. v. Haagen–Dazs Co., Inc. (In re S.N.A. Nut Co.)*, 215 B.R. 1004, 1010 (Bankr.N.D.Ill.1997) (emphasis added).

provisions which provide for payment from a common fund to the holders of allowed unsecured claims. However, none of the Defendants had claims as of the Petition Date [19] nor will they have allowed claims based on the Proceedings before they disgorge any avoidable preferences. *See* 11 U.S.C. § 502(h); Fed. R. Bank. P. 3002(c)(3).[20] Accordingly, the Defendants cannot argue persuasively that providing them with a postconfirmation right of payment for any disgorgement claim(s) "vitiat[es]" the Plan. On the other hand, dismissing the Preference Counts on the grounds of *res judicata* would vitiate the Plan which relies for its funding on preference recoveries and the like.

In summary, the Defendants have failed to suggest any persuasive reason why the Preference Counts should be dismissed on the grounds of *res judicata*.

### C. *Preference Counts (Standing)*

The Defendants argue that, as is the case with the Section 542(b) Counts, the Debtor lacks standing to bring the Preference Counts. The court disagrees for the reasons that follow.

■ The Debtor relies upon Plan § 5.2 to provide the Plan provision constituting its "reservation" of the Preference Counts. Section 5.2 authorizes the Debtor to prosecute any claims under Section[ ] ... 547 ... and 550 of the [Bankruptcy] Code ...." (Plan § 5.2.) Bankruptcy Code § 547

deals with the avoidance of preferences and Bankruptcy Code § 550 deals with the recovery of (among other things) preferences. *See* 11 U.S.C. §§ 547, 550. The Disclosure Statement gave notice of the Debtor's intention to commence postconfirmation preference actions. The Defendants argue that Section 5.2's "reservation" was not sufficiently specific to be enforceable here. The court adopts as the better-reasoned view those cases which hold that a Section 1123(b)(3) reservation need not be as specific as the Defendants argue in order to be enforceable. *See, e.g., The Elk Horn Coal Co., LLC v. Conveyor Manufacturing & Supply, Inc. (In re Pen Holdings, Inc.)*, 316 B.R. 495, 504–05 (Bankr.M.D.Tenn.2004) ("It is not practicable, especially in larger cases, for the debtor to identify by name in the plan or disclosure statement every entity that may have received a preferential payment .... Nothing in [Bankruptcy Code] § 1123(b)(3) suggests such specificity is required."); *In re Ampace Corp.*, 279 B.R. at 161 ("[A] subsequent action is *not* barred by a prior confirmation hearing under the doctrine of *res judicata* where the disclosure statement and plan contain a *general* reservation of the right to pursue preference actions post-confirmation." (emphasis in original)). This court believes that the foregoing line of cases is more consistent with the realities of chapter 11 practice than a more stringent rule.[21] In any

---

19. As discussed in part I, above, none of the Defendants filed proofs of claim in this case, nor are they listed as creditors on the Debtor's schedules (as amended).

20. If the Defendants are required to disgorge a preference, those same disgorged funds can provide the source from which their Rule 3002(c) disgorgement claims will be paid (*pro rata* with other allowed claims of other creditors) even if there are no other funds available for that purpose.

21. One undesirable effect of the contrary rule (*i.e.*, that the debtor must list all known preferences) is that the issue of what the debtor and/or its professionals knew and when it/they knew it potentially could be raised defensively in every postconfirmation preference action when the defendant was not specifically named in the plan. In fact, that issue has been raised here. (*See* Proceeding # 03–3075 Doc. I.D. No. 41; Proceeding # 03–3076 Doc. I.D. No. 40; Proceeding # 03–3183 Doc. I.D. No. 27.)

event, the notice to creditors in this case of the existence of potential preference recoveries was adequate. *Cf. Pen Holdings,* 316 B.R. at 500–01 ("As the history of § 1123(b)(3) plainly shows ... the notice at issue in § 1123(b)(3) is not notice to potential defendants, it is notice to creditors generally that there are assets yet to be liquidated that are being preserved for prosecution by the reorganized debtor ...."). Accordingly, the court concludes that the reservation of preference causes of action in the Plan was sufficiently specific. The Debtor has standing to bring the Preference Counts.[22]

■■■ The Defendants further argue that the Debtor lacks standing here because recovery on the Preference Counts must "benefit ... the estate" within the purview of Bankruptcy Code § 550(a). *See* 11 U.S.C. § 550(a).[23] The Defendants argue that since the estate ceased to exist on the effective date of the Plan, it is impossible to "benefit ... the estate" within the purview of Section 550. That argument may not be so much of a "standing" argument as it is an argument that an element under Section 550(a) is lacking. In any event, it is well established that Section 550(a)'s requirement that there be "benefit [to] ... the estate" is satisfied when a postconfirmation preference action will benefit the estate's creditors. *See, e.g., Harstad v. First American Bank,* 39 F.3d 898, 904 (8th Cir.1994) ("[W]e agree with the courts ... that we must look to see whether the Harstads' action would

result in any benefit to creditors;" collecting cases in support.). *Cf. Whiteford Plastics Co. v. Chase National Bank,* 179 F.2d 582 (2d Cir.1950) (after chapter XI arrangement with creditors was confirmed under former Bankruptcy Act, debtor could not avoid lien of creditor when the benefit would flow only to the debtor and not to the creditors). Such benefit is clear here because, pursuant to the Plan, any proceeds of the Preference Counts will be distributed to creditors.

## D. Preference Counts (Judicial Estoppel as to CoolBrands Only)

In its Motion, CoolBrands asserts that claims asserted in the CoolBrands Complaint are barred under the doctrine of judicial estoppel because the Debtor failed to list the relevant transfers in the SOFA. The CoolBrands Complaint alleges both a Section 542(b) Count and a Preference Count (both in the same amount). As to the Section 542(b) Count, CoolBrands' judicial estoppel defense has been mooted by part IV.A of this memorandum. As to the Preference Count, the court finds CoolBrands' judicial estoppel defense to be inapposite for the reasons that follow.

■■■ A party is judicially estopped from asserting a particular position in a lawsuit where (1) that party "advanced an inconsistent factual position in a prior proceeding, and (2) the prior inconsistent position was adopted by the first court in some manner." *United States v. Hussein,* 178

---

22. The court does not consider here the level of specificity needed when the Section 1123(b)(3) reservation is asked to perform both the technical function of remedying the standing problem which arises when the debtor ceases to be a debtor in possession at confirmation *and* to function as a necessary "exception" to the actual *res judicata* effect of a confirmed plan.

23. Bankruptcy Code § 550(a) provides in relevant part as follows:

Except as otherwise provided in this section, to the extent that a transfer is avoided under section ... 547 ...of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property ....

11 U.S.C.A. § 550 (West 2004).

F.3d 125, 130 (2d Cir.1999). "Judicial estoppel is invoked in these circumstances to prevent the party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process." *Galerie Des Monnaies of Geneva, Ltd v. Deutsche Bank, A.G. (In re Galerie Des Monnaies of Geneva, Ltd.),* 62 B.R. 224, 226 (S.D.N.Y.1986) (citation and internal quotation marks omitted).

> A number of courts have invoked judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy .... The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims *for his own benefit* in a separate proceeding.

*Rosenshein v. Kleban,* 918 F.Supp. 98, 104 (S.D.N.Y.1996) (collecting cases; citations omitted and emphasis added).

　　In the CoolBrands Proceeding, the Debtor pursues the Preference Count not for its own benefit but, rather, for the benefit of its creditors. When this court confirmed the Plan, it did so based on the disclosure that the Plan would be funded (at least in part) with the proceeds of the Debtor's preference recoveries in some undetermined amount. If the Debtor had listed the subject transfers in the SOFA (assuming that they were not so listed), that would have added nothing to the court's analysis. Accordingly, it cannot be said that the court "adopted" the Debtor's alleged nonlisting of the subject claims for judicial estoppel purposes.[24]

### E. Preference Counts (11 U.S.C. § 502(d)) [25]

There is a disagreement among the courts as to whether Bankruptcy Code § 502(d) requires that actions for recovery under Bankruptcy Code §§ 542, 543, 550 and/or 553 be brought prior to the time that claims of the target creditor have been allowed. *Compare Seta Corp. of Boca, Inc. v. Atlantic Computer Systems (In re Atlantic Computer Systems),* 173 B.R. 858, 862 (S.D.N.Y.1994) ("[Bankruptcy Code § 502(d)] clearly envisions some sort of determination of the claimant's liability before its claims are disallowed ....") *with Matter of Eye Contact, Inc.,* 97 B.R. 990, 992 (Bankr.W.D.Wis.1989) ("The trustee need not commence an avoidance action to bring section 502(d) into play. By making a *prima facie* showing that the transfer is voidable, he can assert the alleged preference defensively under section 502(d) to defeat a proof of claim."). Section 502(d) makes non-disgorgement of a preference (at least under certain circumstances) grounds for disallowance of a claim of the target creditor. *See* 11 U.S.C. § 502(d). However, the claim to be disallowed pursuant to Section 502(d) is a claim held by the creditor *in addition to* its potential Rule 3002(c) disgorgement claim. Here, as explained above, the Defendants have neither a scheduled additional claim

---

**24.** *In re Riverwood LA Place Associates, LLC,* 234 B.R. 256 (Bankr.E.D.N.Y.1999), is cited by CoolBrands in support. However, that case overruled a claim objection based on an undisclosed fraudulent transfer claim because, given the complete lack of disclosure there, and the timing of the filing of that claim objection relative to the plan confirmation hearing, the court deemed the claim objection to be "close" to "litigation by ambush," *id.* at 260. Given the disclosure in this case that preference actions would be brought postconfirmation, the Debtor here is nowhere near "litigation by ambush" territory.

**25.** This argument appears to have been raised only by Integrated Brands and Eskimo Pie. (*See* Defendants' Memorandum of Law in Response to Plaintiff's Summary Judgment Brief at 14–15.)

nor have they filed a proof of such additional claim. Thus, there is no additional claim to be disallowed pursuant to Section 502(d). Accordingly, Section 502(d) is inapposite.

### F. Preference Counts (Sufficiency of Pleading)

■ The Defendants argue that the Preference Counts in these Proceedings fail to give them fair notice of the Debtor's preference claims against them. The Defendants argue that the Complaints are deficient in that regard because they fail to comply with the requirements of *Valley Media, Inc. v. Borders, Inc. (In re Valley Media, Inc.)*, 288 B.R. 189 (Bankr.D.Del. 2003).[26]

*Valley Media* has been characterized as creating a "heightened pleading standard" for preference complaints which has been rejected by other courts. *See Official Committee of Unsecured Creditors v. Brandywine Apartments (In re The IT Group, Inc.)*, 313 B.R. 370 (Bankr.D.Del. 2004) (Lindsey, J.); *Neilson v. Sheri Southern (In re Webvan Group, Inc.)*, No. 01–2404, 2004 WL 483580, at *2 (Bankr. D.Del. Mar. 9, 2004) (Case, J.); *Family Golf Centers, Inc. v. Acushnet Co. and Fortune Brands, Inc. (In re Randall's Island Family Golf Centers, Inc.)*, 290 B.R. 55 (Bankr.S.D.N.Y.2003). As the *Family Golf Centers* court stated:

> "A complaint need only 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." ' "The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits

of a claim," and relies on discovery and summary judgment motions to identify the disputed facts and eliminate unmeritorious claims.

·        ·        ·        ·        ·

I am compelled to disagree [with *Valley Media*]. First, the Federal Rules of Bankruptcy Procedure do not impose a heightened pleading standard on preference claims, and a preference complaint may provide a defendant with fair notice of the claim despite the lack of information required by *Valley Media*. Furthermore, the complaint should not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The liberal pleading rules shift the focus away from motions directed at the pleadings and towards discovery and motions for summary judgment or other dispositions on the merits. For this reason, while the information identified by *Valley Media* might ultimately be necessary to adjudicate the preference claims, it does not follow that it must be pleaded on pain of dismissal.

Second, a heightened pleading standard may have the unintended effect of cutting off valid claims prematurely. Too often, debtors fail to maintain complete books and records, or a trustee inherits books and records that he cannot interpret. In those circumstances, the debtor or trustee may not be able to satisfy the heightened pleading standard enunciated in *Valley Media*, foreclosing the assertion of claims intended to benefit the creditors.

---

26. [T]he following information must be included in a complaint to avoid preferential transfers in order to survive a motion to dismiss: (a) an identification of the nature and amount of each antecedent debt and (b) an identification of each alleged preference transfer by (i) date, (ii) name of debtor/transferor, (iii) name of transferee and (iv) the amount of the transfer.
*Valley Media*, 288 B.R. at 192.

*Randall's Island,* 290 B.R. at 64–65 (citations omitted). This court substantially concurs with the foregoing rationale for rejecting a "heightened pleading standard" for preferences. Accordingly, the court will analyze the relevant portions of the complaints here under general pleading standards (*i.e.,* Rules 8 and 12 of the Federal Rules of Civil Procedure, made applicable by Rules 7008 and 7012 of the Federal Rules of Bankruptcy Procedure).

■ The Preference Count of the Integrated Brands Complaint alleges in relevant part:

> On various dates between August 7, 2001 and August 13, 2001, which period is within 90 days of the Petition Date, Fieldbrook transferred $216,388.42 *in cash* to [Integrated Brands] ... on account of an antecedent debt.

(Proceeding # 03–3076 Doc. I.D. No. 1 ¶ 10 (emphasis added).) The Preference Count of the Eskimo Pie Complaint alleges in relevant part:

> On various dates between July 27, 2001 and September 19, 2001, which period is within 90 days of the Petition Date, Fieldbrook transferred $68,863.37 *in cash* to [Eskimo Pie] ... on account of an antecedent debt.

(Proceeding 03–3075 Doc. I.D. No. 1 ¶ 10 (emphasis added).) Each allegation gives the relevant Defendant fair notice of the claim and the grounds upon which it rests.

The relevant Defendants can answer those allegations by consulting their own records of receipt and application of cash payments. The referenced allegations of the Integrated Brands Complaint and the Eskimo Pie Complaint are sufficiently well plead.

■ The CoolBrands Complaint requires a different result, however. The Preference Count of the CoolBrands Complaint alleges in relevant part:

> On various dates during the period of 90 days preceding the Petition Date, Fieldbrook transferred $1,381,484.43 to [Coolbrands] ... on account of an antecedent debt.

(Proceeding # 03–3183 Doc. I.D. No. 1 ¶ 10.) Unlike the Integrated Brands Complaint and the Eskimo Pie Complaint (which specified that the challenged transfers were "in cash"), the Preference Count gives CoolBrands no clue (other than a ninety-day time period) as to the nature of the alleged challenged transfers or where in its records to locate them in order to answer the CoolBrands Complaint.[27] If a pleading is "so vague ... that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed. R.Civ.P. 12(e). The court construes the relevant portion of the CoolBrands Motion to be such a motion and concludes that, on these facts, it should be granted.[28] Ac-

**27.** The court declines to assume that the challenged transfers in the Preference Count are the setoffs attacked in the Section 542(b) Count notwithstanding that the stated aggregate amounts are the same.

**28.** At least on the facts presented here, this Court concludes that a mere recitation of the statutory elements of preference ... do not necessarily put the defendants on adequate "notice of the 'particular transaction or set of facts'" for which the plaintiff seeks to recover. Given the [Bankruptcy] Code's extremely

broad definition[] of what constitutes ... a "transfer" ..., the kinds of transactions that can be encompassed within the statutory elements of preference ... are innumerable and not always predictable ....

> It may not be necessary for an initial complaint to identify each transfer by check number, date and amount, but at minimum there must be some description of the *types* of transfer sought to be avoided, such as transfers by cash or check, ... etc.

cordingly, the Debtor will be given thirty (30) days to amend the CoolBrands Complaint to rectify the deficiency. If an amended complaint is not so filed, on the written *ex parte* request of CoolBrands an order will enter dismissing the CoolBrands Complaint without further notice or a hearing.

## V. *CONCLUSION*

For the foregoing reasons, orders will enter granting the Motions to the extent set forth above, and denying them in all other respects.

*Birdsell v. U.S. West Newvector Group, Inc. (In re Cellular Express of Arizona, Inc.),* 275 B.R.

357, 363 (Bankr.D.Ariz.2002) (citations omitted).